667 So.2d 1242 (1995)
Vernice BALLENGER
v.
STATE of Mississippi.
No. 93-DP-00081-SCT.
Supreme Court of Mississippi.
September 21, 1995.
As Modified November 22, 1995.
Rehearing Denied February 8, 1996.
*1247 Andre de Gruy, Charles C. Pearce, Jackson, MS, for Appellant.
Michael C. Moore, Attorney General, Jackson, MS; Marvin L. White, Jr., Assistant Attorney General, Jackson, MS; Charlene R. Pierce, Sp. Ass't Attorney General, Jackson, MS, for Appellee.
En Banc.
JAMES L. ROBERTS, Jr., Justice, for the Court:
Vernice Ballenger ("Ballenger") was indicted by a Leake County, Mississippi, grand jury on September 2, 1992, for the capital murder of Myrtle Ellis while engaged in the commission of the crime of robbery. A jury was impaneled and Ballenger was found guilty. A separate sentencing hearing was conducted and on January 13, 1993, Ballenger was sentenced to death by lethal injection. It is from this conviction and sentence that Ballenger appeals, raising twenty-four separate issues.[1] Finding no reversible error, we affirm both Ballenger's conviction and sentence of death.

STATEMENT OF THE FACTS
Sometime prior to July 10, 1983, Vernice Ballenger traveled from her home in Leake County, Mississippi, to Greenville, Mississippi, where her estranged husband Mac Ballenger ("Mac") was living and asked him to rob her elderly aunt, Myrtle Ellis. Mac told her he would not do it personally, but that he knew somebody who would. That person was James Head ("Head"). Head agreed to the robbery and in turn brought in Ronald Ritter ("Ritter") to help.
The reason for the robbery came about when earlier in the year Myrtle Ellis ("Ellis") had an automobile wreck and was admitted to the hospital. At the hospital Ellis was found to have a substantial sum of money on her person. The accident and the fact that Ellis was carrying a large amount of money was reported in the newspaper.
On or about July 9, 1983, Mac came from Greenville to Leake County. Head and Ritter also came to Leake County in another vehicle. The next morning Head, Ritter, Mac and Ballenger met at Ballenger's house. There was some testimony that the Ballengers' two daughters also may have been at the house. Mac testified that Ballenger agreed to give Head and Ritter each $10,000.00 for robbing her aunt.
Four separate trips were made to Myrtle Ellis' house. On the first trip Mac, Ballenger, Head and Ritter just drove by Ellis' house to look at it and then returned to Ballenger's house. A short time later Ballenger drove Head and Ritter back to Ellis' house but they were scared off when they *1248 spotted a hunter in the woods. Again they returned to Ballenger's house.
Ritter testified that when they returned to Ballenger's house they told Mac what had happened. Ritter stated Mac said they were just scared. Mac opened a bottle of whiskey and they all sat around drinking and planned what they should do. It was decided that another attempt would be made and that Mac would drive Head and Ritter to Ellis' house. Ritter and Mac both testified that when planning the robbery no one intended that Ellis be hurt and in fact it was suggested she be left alone. However, before the three men left on the third trip to Ellis' house Ballenger gave them a pistol and a rifle. In his written statement to police Mac made no mention of anybody having guns.
When they arrived at Ellis' house, Ritter and Head went inside. Mac stated he stayed on the porch. Ritter asked Ellis where her money was and she replied she did not have any. Ritter slapped her and she got mad and said the hospital took the money and it was in the bank. At that point Ritter stepped away from Ellis and Head started hitting her. Head began asking her questions but she had been knocked unconscious. When Ellis could not answer his questions, Head got mad and pulled out the pistol. He put the gun to Ellis' head and pulled the trigger but the gun was not loaded. Head then hit Ellis with the gun.
Both Ritter and Mac testified that Head was a big, violent man and that he had been drinking. They stated that when Ellis said she did not have any money Head went crazy and started hitting her.
Ritter stated that Ballenger told them she had been to see Ellis after the car accident and Ellis told her the bank had taken her money. Ballenger did not believe her and told them that if Ellis did not have the money sewn in her brassiere then it was probably sewn inside a chair or a doll.
Head and Ritter searched the house for the money but found none. Mac searched Ellis' truck and found a doll which he believed possibly contained the money. Mac came back inside the house and told Ritter and Head he had the doll. Head threw Ellis across the room, kicked her and then the three men left. Once in the van, Mac gave the doll to Head who tore it apart. There was no money in the doll so he threw it out the window.
The three returned to Ballenger's house and told her what had happened. Ritter testified that Ballenger
[w]anted to know what happened over there, and we told her, and she wanted to know what did we do, how did we do it. We just pulled up in the driveway and got out and went in. She said, "What do you mean you just pulled up in the driveway and went in?" Said, "Somebody could have seen the van sitting in front of the house." Said, "Where's the woman at?" "Well, the woman's at the house. She's in the house now, is unconscious." And, she said, "Is she alive?" and we said, "Yeah." She said, "Well," and it started out, she was over there before in the van and the woman would know the van, and if she seen Mac or anybody; she would know that Vernice was tied into it, so couldn't leave the situation like that. Said we would have to kill the woman.
Ballenger suggested that Ellis' house be burned down with her in it.
Ritter, Head and Ballenger then went back to Ellis' house. When they arrived Head was dropped off and was supposed to start the fire. Ritter and Ballenger drove down the road then turned around and picked up Head. There was no smoke coming from the house so Ballenger said someone would have to go back. Ritter volunteered. Ritter stated that he intended to get Ellis out of the house before he burned it. When he arrived Ellis was already lying outside. There was a pile of clothes on the floor and Ritter threw a match on them to start a fire. The three then returned to Ballenger's house. Subsequently, Ritter and Head returned to Greenville.
Carolyn Wilcher, a justice court judge in Leake County, Mississippi, testified that at the time Ellis' house was burned down she worked at the Madden hospital and her husband was a volunteer fireman who responded to the fire. Wilcher followed the fire truck to the Ellis house to see if she could help. *1249 When she arrived the house was in flames. Someone found Ellis beside a shed and laid her out beside the road away from the flames. Ellis was unconscious, her head was swollen and she was bruised. Her clothes had been partially ripped off and she was very dirty.
Ellis never regained consciousness at the hospital in Madden and was transferred to University Hospital in Jackson to undergo care from a neurologist. Ellis died at University Hospital at 9:57 p.m. on July 20, 1983. William Featherston performed the autopsy on Ellis. He stated that although there was no skull fracture, there was evidence of injury to the head and brain and some evidence of hemorrhage. Featherston stated that these head injuries were not fatal.
Featherston also examined Ellis' chest area. Ellis' upper four ribs on both her left and right sides were fractured. There was a fracture of the breastbone. The mammary artery which runs along the margin of the breastbone had been torn. There was a large amount of blood in the right chest cavity. "And, this blood had collapsed her right lung and then pushed the heart and the left lung over into the left side of the chest cavity, and that, the hemorrhage and the displacement of the internal organs, is what produced her death." Featherston stated that in his opinion these injuries were consistent with Ellis being struck or kicked in the chest area. There was no evidence of any injury due to fire or being burned.
Bobby Brown, a member of the Carthage Police Department, was a deputy with the Leake County Sheriff's Department in July of 1983. Brown was involved in the investigation of the fire and Ellis' death. Brown stated that they began looking for a light colored custom van with markings on the side. Two or three days after the fire a van fitting that description was located and determined to belong to Ballenger. At the time it was located a picture was taken of the van. That picture was identified by Brown and offered for identification by the State. The picture was put into evidence when Mac Ballenger identified it as being of the van owned by Ballenger in July of 1983. After taking the picture Brown went back to try and match the tires on the van with tracks found at Ellis' house. Brown testified that since the picture had been taken new tires had been put on the van and the van had been repainted.

THE LAW

PRE-TRIAL ISSUES

I. THE TRIAL COURT ERRED IN DENYING INDIVIDUAL SEQUESTERED VOIR DIRE.
Ballenger contends that the trial court erred in denying individual sequestered voir dire concerning pre-trial publicity of the case. Prior to trial Ballenger filed a Motion for Individual Sequestered Voir Dire. A motions hearing was held on September 11, 1992, during which the trial court ruled on numerous motions filed by the defendant. Ballenger offered no affidavits to support this motion nor did she put on any evidence in support of the motion during the motions hearing. The Motion for Individual Sequestered Voir Dire was denied by the trial court.
Ballenger admits in her brief that all potential jurors indicated that they were not prejudiced by the information they had received. The only juror Ballenger attempted to question individually was Eubanks. Defense counsel made no attempt to examine, individually, any other potential juror that had stated they had previous knowledge of the case. Ballenger did not request individual sequestered voir dire of these jurors concerning this issue.
Ballenger argues that since potential jurors were questioned in front of the whole panel, the defense was not able to determine if individual jurors were truly impartial or whether they were just parroting the responses of the other jurors. Whether to allow individual sequestered voir dire is within the discretion of the trial court. Russell v. State, 607 So.2d 1107, 1110 (Miss. 1992) (citing Jones v. State, 461 So.2d 686, 692 (Miss. 1984)); Hansen v. State, 592 So.2d 114, 126 (Miss. 1991). In Hansen this Court held that Rule 5.02 of the Mississippi Uniform Criminal Rules of Circuit Court Practice does not prohibit individualized, sequestered voir dire, but neither does it require more *1250 than what is set out in its terms. See White v. State, 532 So.2d 1207, 1218 (Miss. 1988); Lutes v. State, 517 So.2d 541, 547 (Miss. 1987); West v. State, 463 So.2d 1048, 1054 (Miss. 1985). The trial court did not abuse its discretion in denying sequestered voir dire in this case. Ballenger did not renew her motion for individual sequestered voir dire after several members of the venire indicated they had heard of the case. Pre-trial publicity was not extensive and those jurors who indicated they had heard of the case stated they had not formed an opinion as to guilt and could disregard anything they might have heard or read and decide the case on the evidence. The only juror to sit on the final jury panel who indicated he had heard of the case was James Ganann and he was affirmatively accepted as a juror by Ballenger.

II. REVERSE - WITHERSPOON โ WITH A TWIST. (MORGAN V. ILLINOIS).

Ballenger contends she was prevented by the trial court from questioning jurors as to whether or not they would automatically vote to impose the death penalty if the defendant was found guilty of capital murder. This issue is the reverse of that in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and its progeny where it was held that a juror who would never vote for the death penalty regardless of circumstances or what instructions of law were given is not impartial and should be removed for cause. The United States Supreme Court in Morgan v. Illinois, 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992), held that the trial court erred in refusing to ask whether a potential juror would automatically impose the death penalty upon finding the defendant guilty.
Ballenger contends she repeatedly sought to question jurors on this issue and was not allowed to do so by the trial court. Citing Knox v. Collins, 928 F.2d 657 (5th Cir.1991), Ballenger goes on to argue that not being allowed to question jurors regarding their views on the death penalty denied her the opportunity to intelligently use her peremptory challenges in violation of the state and federal constitutions. She points out that counsel should be given latitude in searching the minds and consciences of jurors in order to intelligently exercise peremptory challenges. See Odom v. State, 355 So.2d 1381, 1383 (Miss. 1978); Jones v. State, 133 Miss. 684, 98 So. 150 (1923).
The record does not support Ballenger's arguments on this issue. Ballenger twice tried to make a motion that she be allowed to question the jury on whether they would vote for the death penalty regardless of aggravating and mitigating circumstances. In those instances the trial court stated it would take up the motion at a later time. Prior to the court's voir dire examination, Ballenger again made the motion. The Court denied the motion stating it would conduct such questioning itself.
Voir dire "is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion." Morgan v. Illinois, 504 U.S. at 729, 112 S.Ct. at 2230, citing Ristaino v. Ross, 424 U.S. 589, 594, 96 S.Ct. 1017, 1020, 47 L.Ed.2d 258 (1976) (quoting Connors v. United States, 158 U.S. 408, 413, 15 S.Ct. 951, 953, 39 L.Ed. 1033 (1895)). See also, Foster v. State, 639 So.2d 1263, 1274 (Miss. 1994). This Court has directed the trial court to take a substantial role in conducting Witherspoon voir dire of potential jurors in capital cases. See Hansen, 592 So.2d at 128-29; Lockett v. State, 517 So.2d 1317, 1335 (Miss. 1987); Gray v. State, 472 So.2d 409, 421 (Miss. 1985). It is logical that the Circuit Court should take a similar role when conducting reverse Witherspoon voir dire.
The trial court asked the venire whether anyone would automatically vote for the death penalty regardless of mitigating circumstances. No member of the venire indicated they would automatically vote for the death penalty and no juror was excused on this basis. The trial court then made a point of asking both the state and the defense, out of the hearing of the jury, whether they were satisfied with the voir dire on this issue. Counsel for both sides stated that they were satisfied with the court's questioning.
Ballenger did not ask the trial court to further voir dire the jurors on this issue, nor did she ask that she be allowed to do so. *1251 Ballenger did not attempt to question the venire further on this issue. She stated that she was satisfied with the court's questioning. There was no violation of Morgan, nor was Ballenger denied the opportunity to make an intelligent decision regarding peremptory challenges with regard to this issue.

III. THE TRIAL COURTS FAILURE TO FOLLOW PROPER JURY SELECTION PROCEDURE DEPRIVED VERNICE BALLENGER OF HER RIGHT TO DUE PROCESS OF LAW SECURED BY ARTICLE 3 ง 14 OF THE MISSISSIPPI CONSTITUTION OF 1890 AND THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES.
Ballenger argues that the trial court violated her rights to due process by denying her a randomly selected jury. Her argument is based on the lower court's action of moving venireman Curtis Johnson to the end of the list of potential jurors.
Ballenger made no contemporaneous objection to having Johnson moved to the end of the selection list. Since no objection was made this issue was not properly preserved for appeal. Cole v. State, 525 So.2d 365, 369 (Miss. 1987); Irving v. State, 498 So.2d 305 (Miss. 1986); Cannaday v. State, 455 So.2d 713, 718-19 (Miss. 1984).

IV. THE DENIAL OF EVIDENCE PRESENTED TO THE GRAND JURY VIOLATED THE STATE AND FEDERAL CONSTITUTIONS AND STATE LAW.
Ballenger contends the trial court erroneously denied her pre-trial motion that she be provided with all evidence presented to the grand jury which returned the indictment against her. In Addkison v. State, 608 So.2d 304 (Miss. 1992), this Court opined:
These general rules of grand jury secrecy have no application, however, to testimony given by witnesses, who are to be used by the state at a pretrial hearing or at trial with respect to charges lodged by an indictment rendered and served as a result of such testimony. The period during which there is prohibition and a criminal sanction for disclosure of grand jury proceedings expires upon the arrest, admission to bail or recognizance of the accused. Miss. Code Ann. ง 97-9-53 (1972): Miss. Unif.Cr.Rules of Cir.Ct.Rule 2.04. Both Rule 4.06(a)(1) and Rule 4.09 contemplate that grand jury testimony given by witnesses to be used by the state is available to the defendant in discovery. Since the trial of this case, Rule 4.06 has been amended to make clear that defendants are entitled to "any statement, written, recorded or otherwise preserved" and "the substance of any oral statement" given by any witness to be offered by the prosecution at trial. Rule 4.06(a)(1). This includes grand jury testimony.
Addkison, 608 So.2d at 313.
In her pre-trial motion Ballenger requested "all evidence the prosecution can lay its hands on, including the right to know what evidence was presented to the grand jury that indicted her." The trial court properly denied this motion. Pursuant to Addkison and Rules 4.06 and 4.09 a defendant is entitled to statements made by any witness to be offered by the prosecution at trial. Ballenger's motion did not contain this limitation but instead requested all evidence presented to the grand jury.
Even though the trial court denied Ballenger's over broad motion she was not denied access to the that evidence presented to the grand jury to which she was entitled. The trial court granted another motion made by Ballenger in which she requested, among other things, copies of all written and/or oral statements made by any person the prosecution intended to call at trial or who had given recorded and/or oral statements to the prosecution or police. This would encompass the grand jury testimony given by any witness that the prosecution intended to call at trial. When the trial court granted this motion the rule set out in Addkison was satisfied.

GUILT PHASE ISSUES

V. THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON THE ELEMENTS OF THE CRIME OF ROBBERY.
Ballenger contends that the lower court's failure to instruct the jury on the elements of *1252 robbery, the underlying felony which elevated the murder of Ellis to capital murder, constitutes reversible error. Although the jury was instructed that to find Ballenger guilty of capital murder they must find the killing took place during the commission of the crime of robbery, they were never instructed on the elements of robbery.
Ballenger argues that two instructions dealing with robbery, D-22 and D-29, were improperly refused by the trial court. Although D-22 is found in the court papers it is not marked in any fashion as being refused, given or withdrawn. There is no mention of D-22 in the transcript. Counsel did not draw it to the attention of the trial court during the discussion of jury instructions nor in Ballenger's motion for new trial. It is the appellant's duty to make sure a claimed error is properly preserved on record. This failure to make a sufficient record concerning instruction D-22 precludes Ballenger from complaining now that the instruction was not given. See Smith v. State, 572 So.2d 847, 849 (Miss. 1990); Burney v. State, 515 So.2d 1154, 1160 (Miss. 1987). See also, Nichols v. Tubb, 609 So.2d 377, 388-89 (Miss. 1992).
Ballenger also complains about the trial court's refusal to give jury instruction D-29. D-29 was a lesser included offense instruction and not just an instruction on the elements of robbery. D-29 would have allowed the jury to find Ballenger guilty of robbery, but not guilty of capital murder. For reasons discussed in Issue VII, infra, instruction D-29 was properly refused.
In Gray v. State, 472 So.2d 409, 416 (Miss. 1985), Gray was charged with capital murder where the underlying felony was kidnaping. In discussing whether the trial court's failure to instruct the jury on the elements of kidnaping was reversible error the Court held:
There is no merit to this assignment of error because Gray makes no objection to the instructions offered by the state and, more importantly, failed to submit an instruction to the trial judge on the elements of kidnaping. The combined failure to object or to request an appropriate instruction operates to waive any objection on this issue. Billiot v. State, 454 So.2d 445, 462 (Miss. 1984); Gilliard v. State, 428 So.2d 576, 583 (Miss. 1983).
Gray, 472 So.2d at 416. Since instruction D-22 was never brought to the attention of the trial court and instruction D-29 was properly refused, it was incumbent upon Ballenger to request an appropriate instruction regarding the elements of robbery. "The case law does not impose upon a trial court a duty to instruct the jury sua sponte, nor is a court required to suggest instructions in addition to those which the parties tender." Conner v. State, 632 So.2d 1239, 1254 (Miss. 1993).

VI. THE EVIDENCE PRESENTED IN THIS CASE IS INSUFFICIENT TO SUSTAIN A CONVICTION OF CAPITAL MURDER.
Ballenger challenges the weight and sufficiency of the evidence to sustain her conviction of capital murder. She contends that the only incriminating evidence was the testimony of Ronald Ritter and Mac Ballenger, two of the accomplices to the robbery and murder and that their testimony was self-contradictory and substantially impeached.
When reviewing the sufficiency of the evidence, this Court looks at the lower court's ruling "on the last occasion when the sufficiency of the evidence was challenged." Green v. State, 631 So.2d 167, 174 (Miss. 1994) (quoting Wetz v. State, 503 So.2d 803, 808 (Miss. 1987)). Ballenger last challenged the sufficiency of the evidence in her motion for a new trial. Therefore, all the evidence presented at trial should be considered. That evidence is to be looked at in the light most favorable to the State. Green, 631 So.2d at 174; McFee v. State, 511 So.2d 130, 133-34 (Miss. 1987). All evidence and inferences derived therefrom, tending to support the verdict, must be accepted as true, while all evidence favoring the defendant must be disregarded. See Hart v. State, 637 So.2d 1329, 1340 (Miss. 1994); Clemons v. State, 460 So.2d 835 (Miss. 1984); Forbes v. State, 437 So.2d 59 (Miss. 1983); Bullock v. State, 391 So.2d 601 (Miss. 1980). With this standard of review in mind, we cannot reverse a jury's verdict of guilt unless it is found that no reasonable and fairminded hypothetical juror *1253 could find beyond a reasonable doubt that the defendant was guilty. Hart, 637 So.2d at 1340-41; May v. State, 460 So.2d 778, 781 (Miss. 1984).
While it is true that the only real incriminating evidence against Ballenger is the testimony of Mac and Ritter, that is enough to sustain a conviction. In Flanagan v. State, 605 So.2d 753 (Miss. 1992), this Court discussed the weight of a co-conspirator's testimony as follows:
Generally, the law in Mississippi is that a co-conspirator's testimony is enough to sustain a conviction, Doby v. State, 532 So.2d 584, 591 (Miss. 1988); Ragland v. State, 403 So.2d 146, 147 (Miss. 1981); Jones v. State, 381 So.2d 983 (Miss. 1980) citing Lifer v. State, 189 Miss. 754, 199 So. 107 (1940). See also Mason v. State, 429 So.2d 569, 571 (Miss. 1983) where this Court held:
[T]he uncorroborated testimony of an accomplice may be sufficient to convict an accused. Where there is slight corroborative evidence, the accomplice's testimony is likewise sufficient to sustain the verdict.
429 So.2d at 571.
However, the general rule is inapplicable in those cases where the testimony is unreasonable, self contradictory or substantially impeached. Mason, at 571.
Flanagan, 605 So.2d at 757-58.
Ballenger argues that there are contradictions which substantially impeach the witnesses' testimony. Most of the contradictions pointed out by Ballenger are minor and do not concern Ballenger's role in the crime. Other supposed contradictions are not supported by the record.
Ballenger also argues that the psychological examinations show that it was improbable that Ballenger was the mastermind of the robbery and instead it is much more likely that Mac planned the whole thing. Ballenger's psychological profile was not introduced as evidence at trial and Mac's was not offered until the sentencing phase where the trial court admitted it for identification purposes only. Therefore, this evidence was not before the jury for consideration.
The testimony concerning Ballenger's participation in the crime is not "unreasonable, self contradictory or substantially impeached." Flanagan, 605 So.2d at 758.

VII. THE TRIAL COURT ERRED IN DENYING INSTRUCTIONS D-29 AND D-38.
Ballenger also complains about the trial court's refusal to give jury instruction D-29. D-29 read:
The Court instructs the Jury that if the State has failed to prove all the essential elements of the crime of Capital Murder beyond a reasonable doubt, you may consider whether the lesser charge of Robbery has been proven beyond a reasonable doubt.
If you believe from the evidence in this case beyond a reasonable doubt that at the time and place charged in the indictment and testified about, that the defendant, Vernice Ballenger, did willfully, unlawfully and feloniously take the personal property of Myrtle Ellis, in her presence or from her person and against her will, by violence to her person or by putting her in fear of some immediate injury to her person, you may find the defendant guilty of robbery.
In the event you find the defendant guilty of robbery, the form of your verdict may be:
"We, the Jury, find the defendant guilty of Robbery"
In Cannaday v. State, 455 So.2d 713 (Miss. 1984), the defendant was convicted of capital murder defined as a killing that took place during a kidnaping. Cannaday admitted to the kidnaping but denied having anything to do with the actual killing. Cannaday argued that she should have been granted a lesser included offense instruction where the jury could find her guilty of kidnaping but of not guilty of capital murder. The Cannaday Court in finding that no such instruction was warranted held,
Any murder committed during that kidnaping would have been capital murder imputed to all three of the perpetrators. *1254 To be a lesser included offense, kidnaping would have to be a component of murder. Instead the charge of kidnaping is an underlying felony which elevates the murder charge to that of capital murder. Murder and manslaughter may be lesser included offenses of capital murder, but kidnaping is not. In re Jordan, 390 So.2d 584 (Miss. 1980). We find no error in this assignment requiring reversal of the guilt phase.
Cannaday, 455 So.2d at 724-25.
Cannaday and Jordan have never been specifically overruled. However, as pointed out by Ballenger, in several cases this Court has, in dicta, suggested the possibility that the underlying felony in a felony-murder case is a lesser included offense.
Ballenger relies heavily on Abram v. State, 606 So.2d 1015 (Miss. 1992), to support her argument. It is true that in that robbery-murder case the trial court did allow, over the district attorney's objection, a lesser included offense instruction of armed robbery. However, whether it was properly given was not an issue on appeal. It was only mentioned during the Court's discussion as to whether a lesser included offense instruction on murder should have been given.
The Abram Court stated in dicta:
The State correctly points out that "there were but three plausible evidentiary" theories: Capital murder, which is justified by a finding that Abram participated in an armed robbery contemplating that lethal force would be used; armed robbery, which is justified by a jury finding that Abram agreed to the armed robbery but was completely unknowing as to any killings and did not contemplate the use of lethal force; and acquittal.
Abram, 606 So.2d at 1035. This is a mis-statement of the law. While it is true that a defendant involved in an armed robbery in which a killing occurs but who did not do the actual killing must have at least contemplated the use of lethal force before the death penalty may be imposed, no such contemplation or intent is required to be found in the guilt phase of the trial. Pursuant to Miss. Code Ann. ง 97-3-19(2)(e) an unlawful killing is capital murder "[w]hen done with or without any design to effect death, by any person engaged in the commission of the crime of ... robbery... ." (emphasis added). Abram did not overrule Cannaday.
In the case of Meeks v. State, 604 So.2d 748 (Miss. 1992), Meeks was convicted of murder/kidnaping capital murder and was also separately indicted, convicted and sentenced on just the kidnaping charge. In discussing the double jeopardy issue the Court stated:
The Count I/Section 97-3-19(2)(e) charge of capital murder effectively put Meeks in jeopardy for kidnaping Tana Renee Meeks. We say this in the sense that the kidnaping was a constituent element of the capital murder charge. The Count II/Section 97-3-53 charge of kidnaping called for proof of the same kidnaping of Tana Renee Meeks. To be sure, Count I calls for more, proof of the kidnaping plus, but nothing in Count II required that the prosecution prove a fact not necessary to Count I. Conceptually Count II/kidnaping is a garden variety lesser included offense of Count I/capital murder and may not be separately punished, simultaneously or consecutively.
Meeks, 604 So.2d at 754 (emphasis in original).
Meeks does not overrule Cannaday. In the context of double jeopardy, the underlying felony in a felony-murder is by definition included in the greater offense and may not be punished separately. This does not mean it is a lesser included offense which requires a separate jury instruction. A lesser included offense instruction should be given, on request, "if a `rational' or a `reasonable' jury could find the defendant not guilty of the principal offense charged in the indictment yet guilty of the lesser included offense." Mease v. State, 539 So.2d 1324, 1329-30 (Miss. 1989). See also, Toliver v. State, 600 So.2d 186, 189 (Miss. 1992); Mackbee v. State, 575 So.2d 16, 23 (Miss. 1990). "A `lesser included offense' is defined as `one composed of some, but not all, of the elements of the greater crime, and which does not have any element not included in the greater offense.'" Cannaday v. State, 455 So.2d 713, 724 (Miss. 1984) (quoting Black's Law Dictionary, p. 812 (5th ed. 1979)). First, *1255 robbery is not a component of murder. Cannaday, 455 So.2d at 724-25; In re Jordan, 390 So.2d 584 (Miss. 1980). Second, it is undisputed that Ellis died as a result of injuries suffered during the robbery. Therefore, under the definition of felony-murder, if Ballenger was found guilty of the robbery, she was also guilty of capital murder. Miss. Code Ann. ง 97-3-19(2)(e).
It should also be noted that the wording used in D-29 does not fit the evidence presented in the case. The submitted instruction read in part, If you find "Vernice Ballenger, did willfully, unlawfully and feloniously take the personal property of Myrtle Ellis, in her presence or from her person... ." The State never asserted nor did the evidence suggest the possibility that Ballenger was actually present during the robbery. Before an instruction can be given, as a general rule it must be supported by the evidence otherwise, it should not be given. Givens v. State, 618 So.2d 1313, 1320 (Miss. 1993); Hicks v. State, 580 So.2d 1302, 1306 (Miss. 1991), (citing Dennis v. State, 555 So.2d 679, 683 (Miss. 1989)); Moffett v. State, 540 So.2d 1313 (Miss. 1989).
Ballenger also contends the trial court erred in not granting instruction D-38, an instruction allowing the jury to find her guilty as an accessory after the fact. Ballenger argues this would have been a lesser included offense instruction which was supported by the evidence. She maintains that the jury could have found her involvement in the robbery ended after the robbery attempt when she, Ritter and Head were scared off by the hunter, but that she later aided the others in avoiding arrest.
This issue is procedurally barred. Although D-38 is found in the court papers it is not marked in any fashion as being refused, given or withdrawn. There is no mention of D-38 in the transcript. Counsel did not draw it to the attention of the trial court during the discussion of jury instructions nor in Ballenger's motion for new trial. It is the appellant's duty to make sure a claimed error is properly preserved on record. This failure to make a sufficient record concerning instruction D-38 precludes Ballenger from complaining now that the instruction was not given. Smith v. State, 572 So.2d 847, 849 (Miss. 1990); Burney v. State, 515 So.2d 1154, 1160 (Miss. 1987). See also, Nichols v. Tubb, 609 So.2d 377, 388-89 (Miss. 1992).

VIII. THE TRIAL COURT ERRED IN DENYING INSTRUCTION D-26 AND IN GRANTING INSTRUCTION S-1A.
Ballenger asked for a lesser included offense instruction on manslaughter. The trial court denied the instruction because it found no evidence to warrant giving it. She contends the trial court erred in refusing D-26 because the jury could have convicted her of manslaughter if they failed to find her guilty of robbery and found the killing took place without malice aforethought.
In Conner v. State, 632 So.2d 1239 (Miss. 1993), this Court in discussing when lesser included offense instructions should be granted, stated:
[a] lesser-included offense instruction should be granted unless the trial judge and ultimately this Court can say, taking the evidence in the light most favorable to the accused and considering all the reasonable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of a lesser-included offense (conversely, not guilty of at least one essential element of the principal charge).
Conner, 632 So.2d at 1254 (quoting McGowan v. State, 541 So.2d 1027, 1028 (Miss. 1989)).
Only if a rational jury could have found Ballenger not guilty of capital murder but guilty of manslaughter should Instruction D-26 have been given. If the jury found, as Ballenger argues they could have, that she was not guilty of robbery, then Ballenger, under the evidence presented at trial, would not have any responsibility for Ellis' death. The evidence at trial clearly showed that the killing took place during a robbery and that Ballenger was not present at the time. Ballenger's culpability for the killing stems from her involvement in the robbery. The evidence does not support the granting of a manslaughter instruction. D-26 was properly refused.
Ballenger also argues that the trial court erred in granting instruction S-1A, an instruction *1256 allowing the jury to consider the lesser included offense of murder. The language in S-1A to which Ballenger now objects reads in pertinent part:
The Court instructs the jury that if the State has failed to prove all the essential elements of the crime of Capital Murder, you may consider the lesser charge of Murder. However, it is your duty to accept the law given to you by the Court; and if the facts and the law warrant a conviction of the crime of Capital Murder then it is your duty to make such finding uninfluenced by your power to find a lesser offense.
Ballenger objected to the instruction at trial stating insufficient evidence to support her involvement in any killing. She now asserts that granting the instruction was error because it required the jury to first acquit her of capital murder before considering simple murder. Ballenger is procedurally barred from raising this claim for the first time on appeal. "The assertion on appeal of grounds for an objection which was not the assertion at trial is not an issue properly preserved on appeal." Haddox v. State, 636 So.2d 1229, 1240 (Miss. 1994); Baine v. State, 606 So.2d 1076 (Miss. 1992); Willie v. State, 585 So.2d 660, 671 (Miss. 1991); Crawford v. State, 515 So.2d 936, 938 (Miss. 1987); Watson v. State, 483 So.2d 1326 (Miss. 1986). See also, M.R.E. 103, Unif.Crim.R.Cir.Ct.Prac. 5.03. "A trial judge will not be found in error on a matter not presented to him for decision." Jones v. State, 606 So.2d 1051, 1058 (Miss. 1992) (citing Crenshaw v. State, 520 So.2d 131, 134 (Miss. 1988); Howard v. State, 507 So.2d 58, 63 (Miss. 1987) Ponder v. State, 335 So.2d 885, 886 (Miss. 1976)).

IX. THE TRIAL COURT ERRED IN ADMITTING EVIDENCE AND ARGUMENT OF "OTHER CRIMES" IN VIOLATION OF THE MISSISSIPPI CONSTITUTION, LAW AND RULES OF EVIDENCE, AND OF THE SIXTH, EIGHT AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION.
Ballenger contends that the trial court erred in denying her motion in limine to bar the introduction of evidence of other crimes. Specifically, she contests evidence presented "concerning the alleged arson of the decedent's house ...," as well as any testimony concerning statements made by Ballenger to Head and Ritter that they should return to Ellis' house and kill her. In denying the motion the trial court stated:
I fail to see that without this testimony how the jury can understand the evidence, if this is omitted as you have suggested. Now, the evidence of the statement to go back and murder and burn the house is evidence of malice, if nothing else. So, I think, too, it is part of the res gestae, part of the overall scenario. I fail to see how a jury can decipher the facts if any of it is deleted. So, your objection is overruled, and it is admitted. Anything else?
Ballenger correctly points out that as a general rule evidence of a crime other than the one for which the accused is being tried is not admissible. Duplantis v. State, 644 So.2d 1235, 1246 (Miss. 1994); Ladner v. State, 584 So.2d 743, 758 (Miss. 1991), cert. denied, 502 U.S. 1015, 112 S.Ct. 663, 116 L.Ed.2d 754 (Miss. 1991) Rose v. State, 556 So.2d 728 (Miss. 1990). There are exceptions to the rule, however. M.R.E. 404(b) provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
This court has consistently held the admission of evidence of unrelated crimes for the purpose of showing the accused acted in conformity therewith to be reversible error. Duplantis, 644 So.2d at 1246; Parker v. State, 606 So.2d 1132, 1136 (Miss. 1992) (citing Rose, 556 So.2d at 731); Houston v. State, 531 So.2d 598, 605 (Miss. 1988). However, as this Court recently stated in Duplantis,
where another crime or act is "so interrelated [to the charged crime] as to constitute *1257 a single transaction or occurrence or a closely related series of transactions or occurrences," proof of the other crime or act is admissible. Wheeler v. State, 536 So.2d 1347, 1352 (Miss. 1988), citing Neal v. State, 451 So.2d 743, 759 (Miss), cert. denied, 469 U.S. 1098, 105 S.Ct. 607, 83 L.Ed.2d 716 (1984). Proof of another crime or act is also admissible where necessary to identify the defendant, to prove motive, or to prove scienter. Wheeler, 536 So.2d at 1352, citing Neal, 451 So.2d at 759.
Duplantis, 644 So.2d at 1246.
Evidence of other crimes or bad acts is also admissible in order to tell the complete story so as not to confuse the jury. In Brown v. State, 483 So.2d 328 (Miss. 1986), the Court stated:
the State has a "legitimate interest in telling a rational and coherent story of what happened... ." Turner v. State, 478 So.2d 300, 301 (Miss. 1985); Neal v. State, 451 So.2d 743, 759 (Miss. 1984). Where substantially necessary to present to the jury "the complete story of the crime" evidence or testimony may be given even though it may reveal or suggest other crimes. State v. Villavicencio, 95 Ariz. 199, 388 P.2d 245 (1964).
Brown, 483 So.2d at 330.
In the case at bar, evidence of the burning of decedent's house was not offered to show Ballenger's character and that she acted in conformity therewith. The decision to return and burn Ellis' house was an integral part of the story surrounding Ellis' death. Ellis was found beaten and unconscious when firemen and volunteers arrived to put out the blaze. The burning of the house was never characterized by the state as arson although that would be the presumption. Even though the actions that actually resulted in Ellis' death occurred prior to Ballenger, Head and Ritter returning to the house and burning it down, the events were closely interrelated and the evidence was admissible for the purpose of showing intent, plan, knowledge and identity. It shows that Ballenger had the intent that Ellis be killed so that she, Ballenger, would not be linked to the robbery. It shows Ballenger's plan to cover up the robbery by burning the house. It shows she had knowledge of the robbery and that she attempted to conceal the crime. Lastly, it identifies Ballenger as a participant in the robbery that resulted in Ellis' murder.
Even where evidence of other crimes is admissible under M.R.E. 404(b), it can not be admitted unless it also passes muster under M.R.E. 403. That is, the risk of undue prejudice must not substantially outweigh its probative value. Duplantis 644 So.2d at 1246-47; Lesley v. State, 606 So.2d 1084, 1089-90 (Miss. 1992); Hogan v. State, 580 So.2d 1275, 1277 (Miss. 1991). Ballenger's statement that Ellis would have to be killed and her house burned was probative to show Ballenger was involved in the robbery and she feared discovery. This is not an instance were a jury hears about another similar crime which would likely cause them to find guilt because she had done it before. The prejudicial effect of this testimony did not outweigh its probative value. The evidence was therefore properly admitted.

X. THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTOR TO ASK LEADING QUESTIONS.
Ballenger next contends that when Ronald Ritter was on the stand the trial court improperly overruled her objection to a leading question asked by the prosecutor. She maintains that through a leading question the prosecutor elicited testimony regarding the doll in which Ballenger thought Ellis might have hidden her money. Ballenger argues that this question dealt with a crucial issue, namely, the identification of Ballenger as a participant in the planning of the robbery. Citing McDavid v. State, 594 So.2d 12, 17 (Miss. 1992), She maintains that the harm caused by the question was neither inconsiderable nor speculative and therefore her conviction should be reversed.
During the direct examination of Ritter by the State we find the following:
Q. What, if anything did Vernice Ballenger tell you and Head that she wanted done?

*1258 A. She told us the woman had approximately $60,000, and she had been over there prior to this, a few days, a week, or whatever, I'm not sure. Said the woman had told her she didn't have the money, the bank took it away from her. Vernice didn't believe her. Said that she knew that she had it, that if she didn't have it sewed in her brassiere, it would probably be inside of a chair, or something. She had a doll. It might be sewed up in the doll.
Ballenger made no objection to this question or to Ritter's answer. Later during direct examination the following exchange took place:
Q. All right. Now, during this time, were any of you able to find the money?
A. No.
Q. Did y'all look for it?
A. Yes.
Q. Okay. You mentioned something earlier about a doll. Do you recall anything about seeking a doll around the residence of Mrs. Ellis?
BY MR. PEARCE: If Your Honor, please, I will object to this. He is leading his witness.
BY THE COURT: Overruled. Go ahead.
A. Mac had searched โ he went outside and looked in the truck and got the doll out of the truck.
Q. (Turner) Out of whose truck?
A. Mrs. Ellis's.
In McDavid, the case cited by Ballenger, this Court opined:
We stated the rule to be applied when reviewing a trial court's decisions regarding leading questions in Whitlock v. State, 419 So.2d 200, 203 (Miss. 1982):
A leading question is one that suggests to the witness the specific answer desired by the examining attorney. [citations omitted] Trial courts are given great discretion in permitting the use of such questions, and unless there has been a manifest abuse of discretion resulting in injury to the complaining party, we will not reverse the decision. [citations omitted] This is because the harm caused is usually inconsiderable and speculative, and only the trial court was able to observe the demeanor of the witness to determine the harm. [citation omitted].

Whitlock, 419 So.2d at 203. See also Palmer v. State, 427 So.2d 111, 115 (Miss. 1983); Thomas v. State, 217 So.2d 287, 288 (Miss. 1968); Summerville v. State, 207 Miss. 54, 64-65, 41 So.2d 377, 379 (1949).
Hutchinson, 594 So.2d at 16-17.
When Ritter testified without objection that Ballenger told them Ellis might have hidden the money in a doll the predicate was laid for the prosecutor to ask Ritter whether or not a doll was found at the house. Ballenger contends that this question linked her to the planning of the robbery. Even if this is so there was considerable other testimony that also linked her to the robbery. If this was a leading question the trial judge did not manifestly abuse his discretion since any harm was "inconsiderable and speculative." Whitlock, 419 So.2d at 203.

XI. THE TRIAL COURT DENIED MRS. BALLENGER A FAIR AND IMPARTIAL JURY BY APPOINTING JAMES GANANN AS JURY FOREMAN.
At the close of the guilt phase, the trial court appointed James Ganann to be the jury foreman. Ballenger contends that it was error for the trial court to appoint a jury foreman even though she admits that she can show no specific prejudice and that there is "no authority in this State's constitution, statutes, court rules or case law concerning the selection of a jury foreperson." Ballenger maintains that when Ganann was appointed as foreman by the trial court his opinions were impermissibly endorsed by the court and because of this his views had a greater influence on the jury than those of a foreperson selected by the jury itself.
At the time the trial court appointed Ganann as jury foreman, Ballenger made no objection. The failure to make a contemporaneous objection waives the right to raise this issue on appeal. Chase v. State, 645 So.2d 829, 835 (Miss. 1994); Cole v. State, 525 *1259 So.2d 365, 369 (Miss. 1987); Irving v. State, 498 So.2d 305 (Miss. 1986); Cannaday v. State, 455 So.2d 713, 718-19 (Miss. 1984).
In the future, trial judges are advised not to appoint jury foremen. Who is to be the foreman is a decision which should be made by fellow jurors.

XII. THE FAILURE TO DEFINE THE SOLE AGGRAVATING CIRCUMSTANCE FOUND BY THIS JURY REQUIRES THAT THE DEATH SENTENCE BE VACATED.
Ballenger also argues that the aggravating circumstance of "whether the capital offense was committed while the Defendant was engaged, or was an accomplice, in the commission of, or an attempt to commit, or flight after committing or attempting to commit, any robbery," was undefined and unconstitutionally vague such that the jury was left without "guidance by which to rationally distinguish between those murders which warrant the death penalty and those which do not."
This issue is procedurally barred. Ballenger did not make this objection to the jury instructions at trial which bars her from raising the issue for the first time on appeal. Foster v. State, 639 So.2d 1263, 1270 (Miss. 1994); Mitchell v. State, 609 So.2d 416, 422 (Miss. 1992); Moawad v. State, 531 So.2d 632, 635 (Miss. 1988); Cole v. State, 525 So.2d 365 (Miss. 1987).

SENTENCING PHASE ISSUES

XIII. THE EVIDENCE FAILS TO ESTABLISH BEYOND A REASONABLE DOUBT THAT THE REQUISITE FACTORS TO IMPOSING A DEATH SENTENCE HAVE BEEN MET.
Next, Ballenger makes another sufficiency of the evidence claim. Pursuant to Miss. Code Ann. ง 99-19-101 (Supp. 1994),
(7) In order to return and impose a sentence of death the jury must make a written finding of one or more of the following:
(a) The defendant actually killed;
(b) The defendant attempted to kill;
(c) The defendant intended that a killing take place;
(d) The defendant contemplated that lethal force would be employed.
See Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). The only one of these factors found by the jury was "(c) The defendant intended that a killing take place."
Ballenger contends there was insufficient evidence for the jury to find that she intended for a killing to take place. She maintains that the only evidence argued by the prosecution to support a finding of intent was statements made by Ballenger after the fatal blows were delivered. Ballenger argues that these after-the-fact statements can not support a finding of intent. As authority, Ballenger relies on two cases dealing with malice aforethought. See Windham v. State, 520 So.2d 123, 126 (Miss. 1987); Patterson v. State, 289 So.2d 685, 686 (Miss. 1974). She also points out that both Mac and Ritter testified that while planning the robbery it was agreed that Ellis should not be harmed.
The standard of review for a sufficiency of the evidence claim requires this Court to
view the evidence and all reasonable inferences which may be drawn therefrom in the light most consistent with the verdict. We have no authority to disturb the [jury] verdict short of a conclusion on our part that upon the evidence, taken in the light most favorable to the verdict, no rational trier of fact could have found the fact at issue beyond a reasonable doubt.
Abram v. State, 606 So.2d 1015, 1041-42 (Miss. 1992) (quoting White v. State, 532 So.2d 1207, 1220 (Miss. 1988)).
The testimony shows that Ballenger gave guns to both Head and Ritter. Although, there was testimony that Head's gun was unloaded, the jury could have found this sufficient evidence that Ballenger intended that Ellis be killed. This intent is further supported by the fact that Ellis was an elderly woman in her seventies while Head and Ritter were strong young men. What purpose would Ballenger have in giving guns to three men who merely planned on robbing an *1260 elderly woman, unless it was also her intent that those guns be used. Despite the fact that Mac and Ritter testified that while planning the robbery it was discussed that Ellis should not be hurt, the jury could have chosen not to believe this testimony in light of the fact that Ballenger gave them guns and they accepted them.
Testimony also showed that for the purpose of covering up her involvement in the robbery Ballenger stated that Ellis would have to be killed and her house burned. The fact that the fatal wound had already been inflicted at the time of this statement does not lessen Ballenger's intent that a killing take place.

XIV. THE SUBMISSION OF THE "ROBBERY" AGGRAVATING CIRCUMSTANCE AT THE SENTENCING PHASE OF THIS TRIAL VIOLATED MRS. BALLENGER'S RIGHTS UNDER THE EIGHT AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES AND ARTICLE 3 ง 28 OF THE MISSISSIPPI CONSTITUTION OF 1890.
Next, Ballenger argues that the trial court committed reversible error in the double use of robbery as an aggravating factor and as an essential element of the crime of capital murder. This was the only aggravating factor found by the jury. Ballenger, citing Godfrey v. Georgia, 446 U.S. 420, 433, 100 S.Ct. 1759, 1767, 64 L.Ed.2d 398 (1980), contends that since she was convicted of capital murder defined as killing in the commission of a robbery, the robbery aggravating circumstance duplicated the elements of the offense and failed to provide a "principled way to distinguish this case, in which the death penalty was imposed, from the many cases in which it was not." She maintains that "[s]uch duplication in a `weighing' capital sentencing scheme violates the Eighth Amendment to the constitution of the United States and Article 3 ง 28 of the Mississippi Constitution." All of Ballenger's supporting authority is from other jurisdictions. See Tennessee v. Middlebrooks, 840 S.W.2d 317 (Tenn. 1992); Engberg v. Meyer, 820 P.2d 70 (Wy. 1991); State v. Cherry, 298 N.C. 86, 257 S.E.2d 551 (1979).
The doubling up argument has consistently been rejected by this Court. See Ladner v. State, 584 So.2d 743, 762-63 (Miss. 1991); Pinkney v. State, 538 So.2d 329, 358-59 (Miss. 1988), vacated on other grounds, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990); Jones v. State, 517 So.2d 1295, 1300 (Miss. 1987), vacated on other grounds, 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988). This issue was discussed by the United States Supreme Court in Lowenfield v. Phelps, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). Lowenfield and its application to Mississippi law was discussed by this Court in Ladner.
In Lowenfield ... the petitioner sought to have his death sentence vacated on the ground that the sole aggravating circumstance found by the jury at the sentencing phase was identical to an element of the capital crime for which he was convicted. Id. at 241, 108 S.Ct. at 552-53, 98 L.Ed.2d at 579. The United States Supreme Court held that when constitutionally required narrowing of the class of persons eligible for the death penalty is accomplished by the legislative definition of capital offenses in the guilt phase (as is done in Louisiana and Mississippi), the jury's further narrowing in the sentencing phase is not constitutionally required. Id. at 241-46, 108 S.Ct. at 552-55, 98 L.Ed.2d at 579-83.
Ladner, 584 So.2d at 763.
In her reply brief, Ballenger contends that this Court's prior reliance on Lowenfield is misplaced. Citing Stringer v. Black, 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992), she argues that Lowenfield does not apply to the review of aggravating circumstances within the Mississippi sentencing scheme. It is Ballenger's reliance on Stringer which is misplaced. In Stringer, the U.S. Supreme Court held that in states where aggravating factors are decisive the use of factors with "vague or imprecise content" is not permitted. Ballenger argues the holding in Stringer applies not only to "vague" aggravating circumstances, but also to the use of aggravating circumstances that fail to *1261 "genuinely narrow" the class of death eligible offenders. She maintains that the use of the "robbery aggravating circumstance when applied to a `robbery-felony' murder case fails to effectively narrow the class of death eligible offenders."
Her argument fails. Lowenfield, and not Stringer, is the appropriate authority on this issue. The "narrowing" of the class of death eligible offenders has been done legislatively in Mississippi under Miss. Code Ann. ง 97-3-19(2) (1972 & Supp. 1994). In Lowenfield the Court held that when the narrowing process is done legislatively,
[t]he fact that the sentencing jury is also required to find the existence of an aggravating circumstance in addition is no part of the constitutionally-required narrowing process, and so the fact that the aggravating circumstance duplicated one of the elements of the crime does not make this sentence constitutionally infirm.
Lowenfield, 484 U.S. at 246, 108 S.Ct. at 555, 98 L.Ed.2d at 582.

XV. THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY THAT BECAUSE OF MRS. BALLENGER'S PRIOR CONVICTION SHE WOULD NOT BE ELIGIBLE FOR PAROLE UNTIL AGE SEVENTY.
Ballenger's attorney asked that the jury be instructed, as a mitigating circumstance, that if given a life sentence Ballenger would be seventy years old before she would be eligible for parole. The trial court refused to give this as a mitigating factor. Ballenger contends this was reversible error. To support her argument Ballenger cites Davis v. State, 512 So.2d 1291 (Miss. 1987). In that case Davis sought to have introduced as a mitigating circumstance the fact that he had previously been convicted of assault for which he was given a prison sentence. The trial court refused to allow into evidence that sentencing order. This Court held that the use of mitigating evidence is virtually unlimited with the only restriction being that it must be relevant. Davis, 512 So.2d at 1293; Leatherwood v. State, 435 So.2d 645, 650 (Miss. 1983). See also, Eddings v. Oklahoma, 455 U.S. 104, 112, 102 S.Ct. 869, 875, 71 L.Ed.2d 1, 9 (1982); Washington v. State, 361 So.2d 61, 68 (Miss. 1978). Ballenger also cites Turner v. State, 573 So.2d 657, 675 (Miss. 1990), in which this Court held that in capital murder cases an habitual offender status hearing should be held prior to the sentencing phase so that the jury could have the benefit of knowing whether the defendant would be eligible for parole, probation or suspension of sentence if given life imprisonment instead of the death penalty. See also, Russell v. State, 607 So.2d 1107 (Miss. 1992); Berry v. State, 575 So.2d 1 (Miss. 1990); Mackbee v. State, 575 So.2d 16 (Miss. 1990).
The case at bar is not one where the defendant was an habitual offender and would not be eligible for parole. If she had been given a life sentence, Ballenger would have been eligible for parole at some point. She wanted the trial judge to instruct the jury that it would not be until she was seventy years of age. The trial judge refused stating that if he made the sentence concurrent with the one she was already serving Ballenger would be only sixty-five when she became eligible for parole.
Miss. Code Ann. ง 99-19-21 reads, "[w]hen a person is sentenced to imprisonment on two (2) or more convictions, the imprisonment on the second, or each subsequent conviction shall, in the discretion of the court, commence either at the termination of the imprisonment for the preceding conviction or run concurrently with the preceding conviction." By definition, the trial judge cannot make this decision until the second sentence has been given. This is unlike the situation with an habitual offender status hearing where all the elements for a decision are present prior to the sentencing phase. Ballenger's age at the time she would be eligible for parole, if given a life sentence, was speculative and was properly withheld from the jury. See Turner, 573 So.2d at 674-75; Mhoon v. State, 464 So.2d 77, 83 (Miss. 1985).
It should also be noted that although the jury was not told at what age Ballenger might be eligible for parole on a life sentence, there was testimony during the sentencing phase that she would not be eligible *1262 for parole on the armed robbery conviction until age 60 or 61. The jury was instructed that when deciding on punishment they were to consider any evidence before them which they considered to be mitigating in nature.

XVI. THE TRIAL COURT'S REFUSAL TO INSTRUCT THE JURY THAT IT WAS TO CONSIDER AS A MITIGATING CIRCUMSTANCE THE SENTENCES GIVEN MRS. BALLENGER'S ACCOMPLICES VIOLATED THE STATE AND FEDERAL CONSTITUTIONS AND STATE LAW.
At sentencing Ballenger sought to have listed as a mitigating circumstance the fact that none of her three accomplices were given the death penalty. The trial court denied this request. Ballenger claims the trial court's failure to list this as a mitigating factor constitutes reversible error. In support of her argument, Ballenger relies on a number of cases, including, Parker v. Dugger, 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991); O'Callaghan v. Dugger, 542 So.2d 1324 (Fla. 1989); Johnson v. State, 303 Md. 487, 495 A.2d 1 (1985) and State v. Goodman, 298 N.C. 1, 257 S.E.2d 569 (1979).
Parker and O'Callaghan are not on point. In those cases the jury was either told it could not consider non-statutory mitigating circumstances or it was not informed it could consider non-statutory mitigating circumstances. The U.S. Supreme Court has consistently held that in capital cases the sentencer must be allowed to consider "as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978) (plurality opinion). See also, Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982).
That was not the case here. Not only was the jury instructed on several specific non-statutory mitigating factors but at least four sentencing instructions informed the jury they should not limit their consideration to those mitigating circumstances listed, but should take into consideration any evidence they deemed to be mitigating.
Ballenger offers no authority which states that even when the jury is instructed they may consider non-statutory mitigating circumstances they must still be specifically instructed that a co-defendant's sentence may be considered as a mitigating factor. Ballenger's sentencing jury was made well aware of the fact that none of her co-defendant's received the death penalty. They were also well instructed that in deciding whether to impose the death penalty they could consider "any other matter, any other aspect of the Defendant's character or record, and any other circumstance of the offenses brought you during the trial of this cause which you, the Jury, deem to be mitigating on behalf of the Defendant." This included the sentences of Ballenger's co-defendants.
Ballenger goes on to argue that statements made by the prosecution during closing arguments had the effect of an instruction to the jury that they could not consider the life sentences given to Mac, Ritter and Head as a mitigating factor. Ballenger did not object to the statement by the prosecution during closing argument at the sentencing phase about which she now complains. The failure to make a contemporaneous objection procedurally bars this claim. Foster v. State, 639 So.2d 1263, 1302 (Miss. 1994); Turner v. State, 573 So.2d 657 (Miss. 1990); Willie v. State, 585 So.2d 660 (Miss. 1991). Even without the procedural bar the jury was adequately instructed that they were to consider any evidence they thought to be mitigating.

XVII. THE TRIAL COURT ERRED IN EXCLUDING RELEVANT MITIGATION EVIDENCE IN VIOLATION OF THE FEDERAL AND STATE CONSTITUTIONS AND STATE LAW.
During the sentencing phase, Ballenger sought to have introduced into evidence a psychological report on Mac Ballenger to *1263 show that it was probable that Mac, and not Ballenger, was the mastermind behind the robbery and murder of Ellis. The State objected on the grounds of relevancy and hearsay. The trial court sustained the objection. Ballenger argues that the report was relevant to the statutory mitigating circumstance of "[t]he defendant acted under extreme duress or under the substantial domination of another person." Miss. Code Ann. ง 99-19-101(6)(e).
There is substantial discussion in the record concerning the introduction of this report. Ballenger argued that the report was admissible under Green v. Georgia, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979). On the record the trial court discussed Green and then went on to outline what was contained in the psychological report on Mac Ballenger. The trial judge then asked Ballenger's attorney how the report was relevant to sentencing. Counsel replied:
If Your Honor, please, Dr. Stanley also has another finding that Mac Ballenger is the type of personality that must be in charge of things. He states, he quotes, a provision of a sentence completion test in there, where the words "I like" and then were followed by words Mr. Ballenger filled out, "to be the boss." One mitigating factor is where the Defendant was under the substantial domination of others.
The trial court refused to admit the report on the basis of relevancy stating that he did not believe Green to be on point. The report was marked for identification.
In her brief, Ballenger continues to rely on Green arguing that a state evidentiary rule can not operate to exclude otherwise relevant mitigating evidence. As this Court stated in Conner v. State, 632 So.2d 1239, 1266 (Miss. 1993), that is too broad an interpretation of Green. In that case, the defendant Green and Carzell Moore were indicted for rape and murder. Moore was tried separately and convicted on both counts. Green was subsequently convicted of murder and at the sentencing hearing sought to introduce the testimony of Thomas Pasby, a witness for the State at Moore's trial. Pasby would have testified that Moore had told him that he had killed the victim after sending Green on an errand. The trial court refused to allow this testimony, holding it to be inadmissible hearsay under Georgia law.
The U.S. Supreme Court reversed, holding:
Regardless of whether the proffered testimony comes within Georgia's hearsay rule, under the facts of this case its exclusion constituted a violation of the Due Process Clause of the Fourteenth Amendment. The excluded testimony was highly relevant to a critical issue in the punishment phase of the trial, see Lockett v. Ohio, 438 U.S. 586, 604-605 [98 S.Ct. 2954, 2964-2965, 57 L.Ed.2d 973] (1978) (plurality opinion); id., at 613-616 [98 S.Ct. at 2969-2970] (opinion of BLACKMUN, J.), and substantial reasons existed to assume its reliability... . In these unique circumstances, "the hearsay rule may not be applied mechanistically to defeat the ends of justice." Chambers v. Mississippi, 410 U.S. 284, 302 [93 S.Ct. 1038, 1049, 35 L.Ed.2d 297] (1973).
Green, 442 U.S. at 97, 99 S.Ct. at 2151, 60 L.Ed.2d at 741.
The holding in Green is not applicable to the case sub judice. Although the State objected to the introduction of the psychological report on the grounds of both relevancy and hearsay, the trial court did not find it inadmissible because of hearsay or because of any other rule of evidence except for the fundamental one, the report was not relevant. Before Green comes into play evidence "highly relevant to a critical issue in the punishment phase of the trial" must be excluded because of a mechanistic application of a state evidentiary rule. 442 U.S. at 97, 99 S.Ct. at 2151, 60 L.Ed.2d at 741. The trial court in the case at bar excluded the evidence simply because it felt it was not relevant. 442 U.S. at 97, 99 S.Ct. at 2151-52, 60 L.Ed.2d at 741. We can not say the trial court erred in this ruling.
Ballenger offered the report to demonstrate the possibility of the presence of the statutory mitigating factor that she acted under the substantial domination of another person, namely Mac. There was absolutely no evidence that Mac had any kind of dominating *1264 influence over Ballenger. In her testimony during the sentencing phase Ballenger gave no indication that such a relationship existed. As for the psychological report on Mac Ballenger, it has no relevance to this issue whatsoever. Two statements in the seven page report indicated that Mac liked to be in charge of things. This goes to Mac's personality, not Ballenger's. There is no evidence to show that Ballenger was the type of person that could be dominated or easily influenced by others, much less by Mac. The report was properly excluded.

XVIII. THE TRIAL COURT ERRED IN DENYING SENTENCING INSTRUCTIONS D-4, D-5 AND D-10.

A. The trial court erred in denying the "sympathy" instruction.
At sentencing Ballenger proposed the following instruction:
The Court instructs the Jury that although at the guilt phase of the trial, you were instructed that you were not to be swayed by sympathy, at this phase of the trial you are bound by law and your oath as jurors to consider mitigating factors. Mitigating factors are facts that, whle [sic] they do not justify or excuse the crime, nevertheless in fairness, sympathy and mercy to Vernice Ballenger must be considered by you as extenuating or reducing the degree of her blame or punishment. You may not, however, be swayed by prejudice or public opinion.
The trial court agreed that sympathy and mercy should be considered, but refused instruction D-4 as confusing and peremptory in nature.
Ballenger contends that the denial of this instruction was error, especially when taken together with instruction S-1 which was given and which reads in part:
You should consider and weigh any aggravating and mitigating circumstances, ... but you are cautioned not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling.
....
In the event that you find that the mitigating circumstance(s) do not outweigh or overcome the aggravating circumstance(s), you may impose the death sentence.
Ballenger did not object to this language in S-1 and is procedurally barred from raising this claim for the first time on appeal. "The assertion on appeal of grounds for an objection which was not the assertion at trial is not an issue properly preserved on appeal." Haddox v. State, 636 So.2d 1229, 1240 (Miss. 1994). See also, Baine v. State, 606 So.2d 1076 (Miss. 1992); Willie v. State, 585 So.2d 660, 671 (Miss. 1991); Crawford v. State, 515 So.2d 936, 938 (Miss. 1987); Watson v. State, 483 So.2d 1326 (Miss. 1986); M.R.E. 103, Unif.Crim.R.Cir.Ct.Prac. 5.03. Nevertheless, this Court approved of this exact language in Willie, stating:
The United States Supreme Court has found that the anti-sympathy language used in the preceding instruction passes constitutional muster. California v. Brown, 479 U.S. 538, 542-43, 107 S.Ct. 837, 839-40, 93 L.Ed.2d 934 (1987). We find that because the instruction does not inform the jury that it must disregard in toto sympathy and leaves the jury the option to vote for or against the death penalty, the instruction is a proper statement of the law. See Pinkney v. State, 538 So.2d 329, 351 (Miss. 1988), vacated on other grounds, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990); Williams v. State, 544 So.2d 782, 788 (Miss. 1987). This argument has no merit.
Willie, 585 So.2d at 677. Therefore, this issue must be decided solely on whether or not D-4 was properly denied.
In Ladner v. State, 584 So.2d 743, 759-60 (Miss. 1991), cert. denied, 502 U.S. 1015, 112 S.Ct. 663, 116 L.Ed.2d 754 (1991), the Court discussed whether or not an instruction identical to D-4 should have been given. It held that since the sentencing jury was instructed that it must consider mitigating circumstances if any aggravating circumstances were found, an instruction stating that the jury must consider sympathy and mercy for the defendant would be cumulative and need not be given. Ladner, 584 So.2d at 759-60.
*1265 In the case at bar several instructions directed the jury that it must consider mitigating circumstances. Ballenger was not entitled to an instruction that the jury must consider sympathy and mercy on her behalf. This instruction was properly denied.

B. The trial court erred in denying the "life option" instruction.
Ballenger requested the following sentencing instruction be given:
The Court instructs the Jury that there is nothing which would suggest that the decision to sentence the Defendant to life imprisonment violates the laws of this State, and even if you find there are no mitigating circumstances in this case which are worthy of your consideration, then, nevertheless, you still may sentence the Defendant to life imprisonment.
The State objected to D-10 as being a mercy instruction and the trial court refused the instruction. D-10 is very similar to instructions this Court has held in the past to be mercy instructions. See Foster, 639 So.2d at 1299-1301; Ladner, 584 So.2d at 761; Nixon v. State, 533 So.2d 1078, 1100 (Miss. 1987). This Court has stated on numerous occasions that a defendant is not entitled to a mercy instruction. See Foster, 639 So.2d at 1299-1301; Hansen v. State, 592 So.2d 114, 150 (Miss. 1991); Ladner, 584 So.2d at 760; Williams v. State, 544 So.2d 782, 788 (Miss. 1987). See also, Saffle v. Parks, 494 U.S. 484, 492, 110 S.Ct. 1257, 1262, 108 L.Ed.2d 415, 427 (1990); Miss. Code Ann. ง 99-19-101(2)(c). It was not error to deny this instruction.

C. The trial court erred in denying the "presumption of life" instruction.
Ballenger also argues the trial court erred in denying D-5, a presumption of life instruction. D-5 reads:
Vernice Ballenger enters this phase of the trial with the presumption that there are no aggravating circumstances that would warrant a death sentence, and the presumption that the appropriate punishment in this case should be life imprisonment. These presumptions remain with Vernice Ballenger throughout the sentencing hearing, and can only be overcome if the prosecution convinces each one of you beyond a reasonable doubt that death is the only appropriate punishment.
Ballenger contends that just as in the guilt phase where the defendant is entitled to an instruction that the defendant is presumed innocent and that presumption must be overcome by the State, in the sentencing phase a defendant should be entitled to an instruction that life is presumed to be the appropriate sentence unless that presumption is overcome. Ballenger correctly points out that a defendant is entitled to the same constitutional guarantees at the sentencing phase as at the guilt phase. See Bullington v. Missouri, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981) (The Double Jeopardy Clause applies to bifurcated sentencing hearings in capital cases where the State has a burden of proof); Holland v. State, 587 So.2d 848, 873 (Miss. 1991); Dycus v. State, 440 So.2d 246, 257-58 (Miss. 1983). However, Ballenger cites no authority directly on point to support her argument. The only other cited cases deal with the presumption of innocence in the guilt phase. See Gentry v. State, 108 Miss. 505, 66 So. 982 (1915). See also, Taylor v. Kentucky, 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978).
In Chase, 645 So.2d at 861-62, it was argued that a defendant should enter the sentencing phase with a presumption that life is the appropriate punishment. We denied the argument stating:
This issue was disposed of in Leatherwood v. State, 435 So.2d 645 (Miss. 1983), where this Court held that while one found guilty of capital murder occurring during a robbery becomes subject to the death penalty, this penalty is not automatic.
The appellant's argument that he enters into the sentencing phase of the bifurcated trial with one strike against him is correct in one sense โ i.e., if he had not been convicted of a capital offense, there would be no need for the sentencing hearing and he would simply be sentenced to serve a life term. This does *1266 not mean though that the procedure is unfair or faulty.
435 So.2d at 650.
Shell's reliance on Jackson v. Dugger, 837 F.2d 1469, 1473 (11th Cir.1988) is improper. In Jackson, the jury was instructed that death was the appropriate penalty. In the case sub judice, there was no such instruction. Therefore, there was no presumption that death was the proper sentence.
Chase, 645 So.2d at 861. (emphasis in original).
A search of the law of other jurisdictions finds only two states that have previously addressed the issue of whether or not a capital defendant is entitled to a "presumption of life instruction" at sentencing. Oklahoma has consistently held that a defendant in not entitled to such an instruction. See Carter v. State, 879 P.2d 1234, 1252 (Okla. Crim. App. 1994); Brown v. State, 871 P.2d 56, 73 (Okla. Crim. App. 1994); Battenfield v. State, 816 P.2d 555, 564 (Okla. Crim. App. 1991), cert. denied, 503 U.S. 943, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992); Fox v. State, 779 P.2d 562, 574 (Okla. Crim. 1989), cert. denied, 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990).
In People v. Tenneson, 788 P.2d 786 (Colo. 1990), the Supreme Court of Colorado held that is was not improper to grant an instruction that read "[t]here is a presumption of life imprisonment in this case." However, the Court went on to state:
Although we conclude that the trial courts did not err in referring to a presumption of life imprisonment in the challenged jury instructions, we believe that the better practice is to avoid the use of that term... . The use of this term has potential for confusing the jury by introducing an additional and unnecessary concept in an already complex set of instructions. For that reason we believe that the inclusion of the term "presumption of life imprisonment" in jury instructions at the sentencing stage of a death penalty case under the statutory scheme applicable here was ill-advised, although within the trial courts' discretion.
Tenneson, 788 P.2d at 797.
In the case at bar the jury was properly instructed on the requirements that must be met to return a penalty of death under Miss. Code Ann. ง 99-19-101. The statute does not mention a "presumption of life imprisonment" and Ballenger was not entitled to such an instruction.

XIX. THE TRIAL COURT ERRED IN GIVING SENTENCING INSTRUCTION S-1.
Ballenger asserts that sentencing instruction S-1, which contained three sentencing options and gave the form of the verdict to be used for each, was erroneous. Ballenger maintains that since the first option, the death option, was followed by a space for the foreman's signature and the other two options were not, the instruction, as written, may have caused the jury to neglect options two and three, the life option and the non-unanimous option.
Although Ballenger objected to this instruction, she did not object to it on the grounds asserted in this assignment. "The assertion on appeal of grounds for an objection which was not the assertion at trial is not an issue properly preserved on appeal." Haddox v. State, 636 So.2d 1229, 1240 (Miss. 1994). See also, Baine v. State, 606 So.2d 1076 (Miss. 1992); Willie v. State, 585 So.2d 660, 671 (Miss. 1991); Crawford v. State, 515 So.2d 936, 938 (Miss. 1987); Watson v. State, 483 So.2d 1326 (Miss. 1986); M.R.E. 103, Unif.Crim.R.Cir.Ct.Prac. 5.03. This issue is therefore procedurally barred.

XX. THE TRIAL COURT ERRED IN GRANTING SENTENCING INSTRUCTIONS S-1 AND S-2.
Ballenger argues that instructions S-1 and S-2 improperly shifted the burden of proof as to the proper sentence to be imposed from the State to the defense. At trial Ballenger objected to the language in S-1 which instructed the jury that before they could impose the death sentence they must find that the mitigating circumstances did not outweigh the aggravating circumstances. *1267 Ballenger also objected to the language in S-2 which reads in part:
Proof beyond a reasonable doubt of the statutory elements of the Capital offense with which the accused is charged shall constitute sufficient circumstances to authorize imposition of the penalty of death unless the mitigating circumstances shown by the evidence outweigh the aggravating circumstances. You shall not be required to make a special finding of any mitigating circumstances in order to return a verdict that the accused should be sentenced to life in prison. However, before you may return a verdict that the Defendant, Vernice Ballenger, should suffer the penalty of death, you must unanimously find in writing that after weighing the mitigating circumstances and the aggravating circumstances one against the other that the mitigating circumstances do not outweigh the aggravating circumstances and that the Defendant should suffer the penalty of death.
Ballenger argued at trial, and again on appeal, that the language in these two instructions allowed the jury to impose the death penalty based solely on the presence of aggravating circumstances.
This issue was addressed in Conner v. State, 632 So.2d 1239 (Miss. 1993), as follows:
At trial, Conner objected to the language in Instruction S-17 which provided in part:
If you find from the evidence that one or more of the preceding elements of mitigation exist, then you must consider whether they outweigh or overcome the aggravating circumstance you previously found. In the event that you find that mitigating circumstances do not outweigh or overcome the aggravating circumstances, then you may impose the death sentence.
He argued then, as now, that a proper instruction would permit imposition of the death penalty only where the jury finds that aggravating circumstances outweigh mitigating circumstances, not vice versa. This argument was thoroughly weighed and found wanting in Shell v. State, 554 So.2d 887, 904 (Miss. 1989), rev'd on other grounds, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990); see also Jordan v. State, 365 So.2d 1198, 1206 (Miss. 1978), cert denied, 444 U.S. 885, 100 S.Ct. 175, 62 L.Ed.2d 114 (1979); Gray v. Lucas, 677 F.2d 1086, 1105-06 (5th Cir.1986).
Conner, 632 So.2d at 1278. Based on our holding in Conner this issue must fail.

XXI. THE TRIAL COURT ERRED IN GRANTING SENTENCING INSTRUCTION S-3.
Ballenger contends that the trial court erred in granting sentencing instruction S-3. This instruction allowed the jury to consider all the evidence presented during the guilt phase of the trial along with that offered in the sentencing phase in deciding whether Ballenger should be given the death penalty or life imprisonment. Ballenger points out that during the sentencing phase the State may only offer evidence relevant to one or more of the eight aggravating circumstances enumerated in Miss. Code Ann. ง 99-19-101(5). Ballenger maintains that when the jury was instructed that they could consider the evidence presented during the guilt phase of the trial, this allowed them to consider non-statutory aggravating circumstances.
This issue is procedurally barred for failure to contemporaneously object. Not only did Ballenger not object, but defense counsel went a step further and affirmatively stated on the record that there was no objection. This action effectively waived the issue for appeal purposes. Foster v. State, 639 So.2d 1263, 1270 (Miss. 1994); Mitchell v. State, 609 So.2d 416, 422 (Miss. 1992); Moawad v. State, 531 So.2d 632, 635 (Miss. 1988); Cole v. State, 525 So.2d 365 (Miss. 1987).

XXII. THE DEATH PENALTY IS A DISPROPORTIONATE PUNISHMENT HERE GIVEN THE CIRCUMSTANCES OF THE CRIME AND THE CHARACTER AND HISTORY OF THE DEFENDANT.
Miss. Code Ann. ง 99-19-105(3) requires this Court to determine with regard to the death penalty,

*1268 (a) Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor;
(b) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in Section 99-19-101; and
(c) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
Miss. Code Ann. ง 99-19-105(3) (1994).
The record indicates no influence of passion, prejudice, or any other arbitrary factor. The jury's finding of the statutory aggravating circumstance of a killing committed during the commission of a robbery is well supported by the evidence in the record. Ballenger, however, asserts that her sentence of death was disproportionate when compared with the penalty imposed in similar cases.
Ballenger relies on Reddix v. State, 547 So.2d 792 (Miss. 1989) (plurality), and Bullock v. State, 525 So.2d 764 (Miss. 1987) (plurality), to show that her death sentence was disproportionate. In both those cases, a plurality of this Court found the death penalty to be disproportionate and remanded the case for the imposition of a life sentence. At the time of the trial in those cases Enmund v. Florida had not yet been decided.
In Reddix, the appellant was eighteen years of age at the time of the crime and suffered from mental illness and mild retardation. Reddix and his accomplice, Larry Jones, planned to rob Arthur Weinberger. Reddix distracted Weinberger while Jones hit him with a wrench. This Court in finding Reddix' sentence of death to be disproportionate discussed the holding in Bullock:
Our proportionality decision in Bullock, rested on the fact that, with only two exceptions, "no capital defendant has had a death sentence affirmed in this state where the sole finding was that he contemplated that lethal force would be used." Bullock, 525 So.2d at 770. We also noted that Bullock's accomplice, the actual killer, had received a life sentence, a point reinforcing our determination that justice required fixing Bullock's sentence at life imprisonment. Id. The same is true here. The United States District Court for the Southern District of Mississippi recently ordered that the State of Mississippi impose upon Larry Jones, the actual killer, a life sentence. Jones v. Smith, 685 F. Supp. 604, 607 (S.D.Miss. 1988). Thereafter, the Harrison County Circuit Court sentenced Jones to life imprisonment.
Accordingly, we hold that Reddix' death sentence is disproportionate to the penalty imposed in similar capital cases, considering both the crime and the appellant.
Reddix, 547 So.2d at 794-95.
This Court has affirmed death sentences where the appellants were not the actual killers. In Stringer v. State, 454 So.2d 468 (Miss. 1984), cert. denied, 469 U.S. 1230, 105 S.Ct. 1231, 84 L.Ed.2d 368 (1985), Stringer, while not the actual triggerman, "was the instigator, the planner, the master-mind and the one who directed the entire occurrence. According to the testimony of the two participants, the attempted armed robbery and the killing would not have occurred had it not been for appellant." Stringer, 454 So.2d at 479. In Leatherwood v. State, 435 So.2d 645 (Miss. 1983), this Court affirmed Leatherwood's sentence of death although he did not do the actual killing. This Court found it sufficient that Leatherwood "planned, schemed, and ultimately physically subdued the victim by choking him with a rope, while another stabbed and bludgeoned the victim to death." Leatherwood, 435 So.2d at 656.
Ballenger, like Stringer and Leatherwood, instigated and planned the robbery of Ellis. Her actions secured others to kill. Ballenger had several opportunities to back out of the robbery or to call it off and she did not. She provided guns to Head and Ritter to use against her defenseless seventy-five year old aunt. Ballenger showed her callousness when she returned with Ritter and Head and burned Ellis' house to cover her guilt. Although Ballenger's accomplices all got sentences less than death, these sentences were not handed down by a jury. Instead Mac, Ritter and Head confessed to their crimes and thereby received lesser, but still significant, sentences. Under the facts *1269 involved, and when compared with similar cases, the death penalty in this case is not disproportionate.

XXIII. PROSECUTORIAL MISCONDUCT IN THE TRIAL OF THIS CASE VIOLATED MRS. BALLENGER'S RIGHT UNDER THE FIFTH, SIXTH, EIGHT AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 3, งง 14, 26 AND 28 OF THE MISSISSIPPI CONSTITUTION OF 1890.
Ballenger contends that the prosecutors in this case committed numerous instances of misconduct which alone and/or in conjunction with one another violated her rights under the state and federal constitutions and Mississippi law and; therefore, require that her conviction and sentence be reversed. See Jenkins v. State, 607 So.2d 1171 (Miss. 1992); Griffin v. State, 557 So.2d 542 (Miss. 1990); White v. State, 532 So.2d 1207 (Miss. 1988).

A. The prosecution vilified the defendant, comparing her to Charles Manson.
The record reflects that during closing argument in the guilt phase the prosecutor made reference to Charles Manson to which the defense objected and was overruled:
You know, an analogy that I can't take credit for, my wife pointed this out to me one time.
You will all remember Charlie Manson in California who had a group of people that lived with him.
BY MR. PEARCE: If Your Honor, please, I will object to him injecting Charles Manson into this trial, and I move for a mistrial.
BY THE COURT: What is the basis of your objection, Mr. Pearce?
BY MR. PEARCE: If Your Honor, please, I think everyone knows who Charles Manson is, and I think he is trying to compare my client with Charles Manson.
BY THE COURT: If there is a comparison in what he is doing, I will rule on that when he makes that, and the Court will inject itself in the argument, but other than that, the Court at this time cannot say that is what he is doing. So, at this time, your objection is overruled. Now, if you feel it needs to be renewed, you may do so.
BY MR. PEARCE: Thank you, Your Honor.
(Turner) The people who were his followers went to the home and killed somebody. He was not there, but was he any less guilty than the ones that were there? By the same token โ
BY MR. PEARCE: Now, if Your Honor, please, again I think he is making a direct comparison of my client with Charles Manson, and we move for a mistrial.
BY THE COURT: I am going to overrule the objection. Now, I will make a further record of the reason I am ruling when we are out of the presence of the jury.
(Turner) If he was just as guilty, why? Because he came up with the idea, just like Vernice Ballenger came up with the idea to rob Mrs. Ellis. He planned what was going to happen, just like Vernice Ballenger planned what was going to happen to Mrs. Ellis. He told his cohorts what to do, just like Vernice Ballenger told Mac Ballenger, James Head, and Ronald Ritter what to do, and then he stood back and didn't get his hands bloody while he sent his followers to do his dirty work, just like Vernice Ballenger sent Head and Ritter in to do hers.
This Court in Ahmad v. State, 603 So.2d 843 (Miss. 1992), stated:
Generally, attorneys on both sides in a criminal prosecution are given broad latitude during closing arguments. See Neal v. State, 451 So.2d 743 (Miss. 1984), cert. denied 469 U.S. 1098, 105 S.Ct. 607, 83 L.Ed.2d 716 (1984); Bullock v. State, 391 So.2d 601 (Miss. 1980), cert. denied 452 U.S. 931, 101 S.Ct. 3068, 69 L.Ed.2d 432 (1981). *1270 This Court has explained that not only should the State and defense counsel be given wide latitude in their arguments to the jury, but the court should also be very careful in limiting free play of ideas, imagery, and personalities of counsel in their argument to jury. See Johnson v. State, 477 So.2d 196 (Miss. 1985), cert. denied 476 U.S. 1109, 106 S.Ct. 1958, 90 L.Ed.2d 366 (1986), reh'g denied 476 U.S. 1189, 106 S.Ct. 2930, 91 L.Ed.2d 557 (1986). Given the latitude afforded an attorney during closing argument, any allegedly improper prosecutorial comment must be considered in context, considering the circumstances of the case, when deciding on their propriety. See U.S. v. Bright, 630 F.2d 804 (5th Cir.1980); U.S. v. Austin, 585 F.2d 1271 (5th Cir.1978).
Ahmad, 603 So.2d at 846. In Ahmad, the appellant was convicted of felonious child abuse. During closing arguments the prosecutor made references to hostages and prisoners of war. This Court held:
Remembering the wide latitude afforded prosecutors in closing arguments, the comments by the State when arguing for a conviction of Abdusabr Ahmad were not improper. Taken in context, the referral to prisoners of war was part of the free play of ideas, imagery, and personalities allowed in closing arguments. The referral to prisoners and hostages does not vilify Abdusabr Ahmad. It is a characterization of I.A.'s position on the day in question. It is not name-calling or a label on Abdusabr Ahmad's overall character. The State did not even compare Abdusabr Ahmad to Arab captors. The State simply compared I.A.'s emotions to that of a prisoner of war or hostage.
Ahmad, 603 So.2d at 846.
Ballenger relies on this Court's holding in Bridgeforth v. State, 498 So.2d 796 (Miss. 1986). In that case the prosecutor referred to the defendant as "scum." This Court opined:
Justice is not served by attorneys who use closing argument to express inflammatory personal ideas or engage in personal vilification. The purpose of closing argument is to enlighten the jury, not to enrage it.
Bridgeforth, 498 So.2d at 801.
Ballenger also cites Steele v. United States, 222 F.2d 628 (5th Cir.1955), where the Court found statements made by the prosecution during closing arguments to be reversible error. In that case, a prosecution for tax evasion, the prosecutor told the jury that it was his opinion that the defendant was guilty, characterized him as a Dr. Jekyll and Mr. Hyde, and also linked himself, the judge and the jury together as being on the same side of the case.
The case at bar can be distinguished from both Bridgeforth and Steele. The State argues that the purpose of the comments was to "explain and enlighten the jury ... that one not present at the scene of the murder and robbery could be just as guilty as the actual actors if that person set the scheme in motion or was the mastermind behind the crime." The prosecutor never called Ballenger names, personally vilifying her, nor did he try to enrage the jury. He did not go into the details of Manson's crimes. Considering the wide latitude given to attorneys on closing arguments it can not be said that these comments were so improper as to require reversal.
Ballenger also complains about a comment made by the prosecution during sentencing phase closing arguments:
As to her health and being sexually abused as a minor, and whatnot, the tough life as she would describe it, that she went through, I say to that, so what? A lot of people have had a lot rougher time in life than she has had, and they don't all turn to a life of crime such as she has.
What she is saying is poor me.
BY MR. PEARCE: If Your Honor, please, I will object to his reference of her turning to a life of crime. There is no evidence in the record to support that at all, and we move for a mistrial.

*1271 BY THE COURT: Your objection is overruled. Your motion is overruled. There is evidence in the record that she is serving a sentence for robbery at this time.
(Duncan) Call it whatever you want to, ladies and gentlemen, but she has committed one armed robbery in the past, and now she has committed an armed robbery and a murder, so you can put whatever label on it you see fit.
Ballenger contends that pursuant to Ellis v. State, 254 So.2d 902 (Miss. 1971), the comment made by the prosecutor that Ballenger had turned to a life of crime was reversible error. In Ellis, the prosecutor referred to the defendant as a "professional criminal." This Court condemned such remarks when not supported by the evidence. Ellis, 254 So.2d at 904.
The case at bar can be distinguished from Ellis. There was evidence in the record that Ballenger was serving a sentence for armed robbery and she had just been found guilty of capital murder. While this may not indicate a life of crime, it certainly comes close. The State argues that the statement was permissible because it was offered in rebuttal to mitigating evidence put on by Ballenger. See Hansen, 592 So.2d at 148; Lanier v. State, 533 So.2d 473, 487 (Miss. 1988). At sentencing, Ballenger argued her background as a mitigating factor and the State sought to defuse this argument. In the context in which the statement was made, taken with the supporting evidence in the record, the statement did not amount to reversible error.

B. The prosecution's closing argument at sentencing raised the specter of appellate review, diminishing the jury's sense of responsibility for the sentence returned.
Ballenger claims that during the sentencing phase closing argument the prosecution violated Williams v. State, 544 So.2d 782, 802 (Miss. 1987), and Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), by impermissibly raising the specter of appellate review and lessening the jury's sense of responsibility in determining the appropriate punishment. The record reflects the following:
BY MR. PEARCE: Do you remember yesterday that a comparison was made between Charles Manson and Vernice Ballenger? You remember the Charles Manson case. 1967, Charles Manson, and members of this group that he led, broke into Sharon Tate's and a lady named Labiance. Something like seven people were brutalized. They even got the human blood of persons who had been killed and brutalized, and they used that to write things on the walls, and that comparison was made to Vernice Ballenger.
Do you know something, ladies and gentlemen? No one has received a death penalty in the Manson case. Charles Manson is alive today. If there was no automatic death penalty in that case, then there is no automatic death penalty at all.
The State in it's rebuttal argument made the following statement:
Now, Mr. Pearce mentioned something about the Charles Manson analogy in his closing, and said that nobody there received the death penalty. Well, my recollection of it is slightly different. If I recall correctly, Charles Manson did receive the death penalty, but the Supreme Court later ruled that the California death penalty was unconstitutional.
BY MR. PEARCE: If Your Honor please, I will object to that argument.
The situation in the case at bar is distinguishable from that in Williams, where the prosecution, in referring to the Jimmy Lee Gray murder case, went into substantial detail concerning the appellate review of that case and the fact that Gray had committed murder after being paroled on a life sentence. The Williams Court, in holding the mention of appellate review to be reversible error stated, "whether or not the argument of appellate review was misleading, this *1272 Court's holdings forbid the mention of appellate review outright." Williams, 544 So.2d at 801. See also, Wiley v. State, 449 So.2d 756 (Miss. 1984).
There is an exception to this rule when the defense "opens the door" to such comment. In Booker v. State, 511 So.2d 1329 (Miss. 1987), this court stated that this "exception exists where the objectionable statement was invited or responsive to the statement of the defense counsel and has been recognized by the United States Supreme Court in Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) and United States v. Young, [470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)]."
Defense counsel invited comment by the State in response to his detailed description of the Manson murders where he left the impression that as heinous as those crimes were they apparently were not considered worthy of the punishment of death. The State merely tried to clear up this misconception by stating that the death penalty was imposed in that case, but the statute was later held unconstitutional. The State made no mention of the appellate process in reference to Ballenger and did not go into any detail concerning the appellate review of the Manson case. The statements by the prosecution were not violative of Williams or Caldwell.

C. The prosecutor made improper comments about the defendant exercising her constitutional rights.
Ballenger contends that the prosecutor made improper comments regarding the exercise of her constitutional rights. Ballenger asserts that the following comment made by the State during the guilt phase closing arguments was error:
Now, the defense says, "Well, if Mac Ballenger, James Head, and Ronald Ritter aren't guilty of capital murder, neither should Vernice Ballenger be."
....
We pleaded these other ones here for not just a slap on the wrist, but terms ranging from life in prison to life plus forty years, and the reason for that is, number one, they decided to face the medicine. They had been caught. They confessed to the law enforcement officers. They told you in Court also their part in it. They faced the music.
The question we have for you now is are you going to make the person who is responsible for all of this face the music, too? Are you going to make Vernice Ballenger face her music?
Ballenger issued no objection to these statements at trial, nor did she raise it in her motion for a new trial. Any claim is waived for failure to make a contemporaneous objection. Hansen v. State, 592 So.2d 114, 139-40 (Miss. 1991).
Second, Ballenger claims that the following comment made by the State during the sentencing phase closing argument was error:
A third reason the Defendant should receive the death penalty is that the other Defendants had acknowledged their guilt, and they have faced the music, and they have cooperated in bringing Vernice Ballenger to justice, but this Defendant, on the other hand, still will not admit her responsibility.
Again no objection was made to this comment at trial and it is raised for the first time on this appeal. Generally, counsel is given wide latitude in closing argument. See Hansen, 592 So.2d at 139; Johnson v. State, 416 So.2d 383, 392 (Miss. 1982); Gray v. State, 351 So.2d 1342, 1346-47 (Miss. 1977). This latitude taken together with the failure to object waives this claim for purposes of appeal. See Hansen, 592 So.2d at 140.

D. The prosecutor improperly defined reasonable doubt and negated the presumption of innocence.
Ballenger next claims that during voir dire, the State improperly defined reasonable doubt. Ballenger argues that the prosecution's comments had the effect of "misleading the jury and thereby lessening the prosecution's burden of proof." She relies *1273 on Nobles v. State, 241 So.2d 826, 827 (Miss. 1970); Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990); and Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), where jury instructions which had the effect of misleading the jury as to the burden of proof were found to constitute reversible error. In Holland v. State, 587 So.2d 848, 873 (Miss. 1991), the Court said that "each juror [must] keep an open mind until the case has been submitted to the jury." (quoting United States v. Klee, 494 F.2d 394, 396 (9th Cir.1974)).
Any error that resulted from the prosecutor's comments were harmless. Jury instructions D-8, D-17 and D-23 properly instructed the jury as to the burden of proof and reasonable doubt standard. This claim is also procedurally barred for failure to contemporaneously object. Foster, 639 So.2d at 1307.

E. The prosecution argued inflammatory and irrelevant factors in support of its cry for the death penalty.

(1) Improper use of lack of evidence of remorse as an aggravating circumstance.

(2) Improper use of statutory aggravating circumstances, not applicable to this case.

(3) Improper use of statutory mitigating circumstances, not applicable to this case, as aggravation.
Ballenger next contends that during closing argument at the sentencing phase the prosecution improperly argued "greed and evilness" as factors in aggravation and used statutory mitigating circumstances as aggravators. None of the statements Ballenger now claims to be improper were objected to at trial. Ballenger's failure to object coupled with the wide latitude given to counsel during closing argument effectively waives this issue for appeal purposes. See Hansen, 592 So.2d at 139-40.

F. The prosecution denigrated mitigation evidence.
Ballenger maintains that the State denigrated mitigation evidence by telling the jury they should not consider it as mitigating. Ballenger made no objection to the State's closing argument on this ground. The claim is therefore waived. Hansen, 592 So.2d at 140; Cole v. State, 525 So.2d 365, 369 (Miss. 1987).

G. The prosecution argued that the death sentence in this case would "send a message", thus divorcing the jury's decision from the actual blameworthiness of this defendant.
During closing arguments at sentencing the State remarked:
The third reason for punishment is deterrence. What is going to deter persons who are inclined to commit these heinous crimes like Vernice Ballenger committed from doing it in the future? Well, the death penalty will most certainly deter Vernice Ballenger from it, but in addition to that, it will also deter others who live in Leake County and, perhaps, hopefully, other areas surrounding Leake County from committing this type of crime, because they will receive a message from your sentence today that this type of crime will not be tolerated in Leake County and will receive the most severe punishment that our law can give it.
Ballenger made no objection at trial to this comment by the State. Again, this failure to object bars the claim. Hansen, 592 So.2d at 140.

H. Conclusion โ Aggregate Error.
This Court has held that the cumulative effect of errors in the trial court may warrant reversal even when the instances taken separately do not. Jenkins v. State, 607 So.2d 1171, 1183 (Miss. 1992); Griffin v. State, 557 So.2d at 553; Stringer v. State, 500 So.2d 928, 939 (Miss. 1986); Hickson v. State, 472 So.2d 379, 385-86 (Miss. 1985). A review *1274 of the alleged instances of prosecutorial misconduct in this case does not reveal either individually or cumulatively any error requiring reversal of this case.

XXIV. THE AGGREGATE ERROR IN THIS CASE REQUIRES REVERSAL OF THE CONVICTION AND DEATH SENTENCE.
Finally, Ballenger argues that because of the cumulative effect and "prejudicial impact" of the errors asserted her conviction and sentence should be reversed. See Hansen, 592 So.2d at 153; Stringer v. State, 500 So.2d at 939.
This Court is obligated to review capital cases "with heightened scrutiny." Hansen, 592 So.2d at 153. Nevertheless, the errors in this case, if any, do not have such a cumulative effect such as to require reversal.
CONVICTION OF CAPITAL MURDER AND SENTENCE OF DEATH BY LETHAL INJECTION AFFIRMED. WEDNESDAY, OCTOBER 25, 1995, SET FOR INFLICTION OF THE DEATH PENALTY AS PROVIDED BY LAW.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., SULLIVAN, PITTMAN, BANKS, McRAE and SMITH, JJ., concur.

APPENDIX

DEATH CASES AFFIRMED BY THIS COURT

Carr v. State, 655 So.2d 824 (Miss. 1995)

Mack v. State, 650 So.2d 1289 (Miss. 1994)

Chase v. State, 645 So.2d 829 (Miss. 1994)

Foster v. State, 639 So.2d 1263 (Miss. 1994)

Conner v. State, 632 So.2d 1239 (Miss. 1993).

Hansen v. State, 592 So.2d 114 (Miss. 1991).
* Shell v. State, 554 So.2d 887 (Miss. 1989), Shell v. Mississippi, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990) reversing, in part, and remanding, Shell v. State, 595 So.2d 1323 (Miss. 1992) remanding for new sentencing hearing.

Davis v. State, 551 So.2d 165 (Miss. 1989).

Minnick v. State, 551 So.2d 77 (Miss. 1989).
* Pinkney v. State, 538 So.2d 329 (Miss. 1988), Pinkney v. Mississippi, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990) vacating and remanding, Pinkney v. State, 602 So.2d 1177 (Miss. 1992) remanding for new sentencing hearing.
* Clemons v. State, 535 So.2d 1354 (Miss. 1988), Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) vacating and remanding, Clemons v. State, 593 So.2d 1004 (Miss. 1992) remanding for new sentencing hearing.

Woodward v. State, 533 So.2d 418 (Miss. 1988).

Nixon v. State, 533 So.2d 1078 (Miss. 1987).

Cole v. State, 525 So.2d 365 (Miss. 1987).

Lockett v. State, 517 So.2d 1346 (Miss. 1987).

Lockett v. State, 517 So.2d 1317 (Miss. 1987).

Faraga v. State, 514 So.2d 295 (Miss. 1987).
* Jones v. State, 517 So.2d 1295 (Miss. 1987), Jones v. Mississippi, 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988) vacating and remanding, Jones v. State, 602 So.2d 1170 (Miss. 1992) remanding for new sentencing hearing.

*1275 Wiley v. State, 484 So.2d 339 (Miss. 1986).

Johnson v. State, 477 So.2d 196 (Miss. 1985).

Gray v. State, 472 So.2d 409 (Miss. 1985).

Cabello v. State, 471 So.2d 332 (Miss. 1985).

Jordan v. State, 464 So.2d 475 (Miss. 1985).

Wilcher v. State, 455 So.2d 727 (Miss. 1984).

Billiot v. State, 454 So.2d 445 (Miss. 1984).

Stringer v. State, 454 So.2d 468 (Miss. 1984).

Dufour v. State, 453 So.2d 337 (Miss. 1984).

Neal v. State, 451 So.2d 743 (Miss. 1984).

Booker v. State, 449 So.2d 209 (Miss. 1984).

Wilcher v. State, 448 So.2d 927 (Miss. 1984).

Caldwell v. State, 443 So.2d 806 (Miss. 1983).

Irving v. State, 441 So.2d 846 (Miss. 1983).

Tokman v. State, 435 So.2d 664 (Miss. 1983).

Leatherwood v. State, 435 So.2d 645 (Miss. 1983).

Hill v. State, 432 So.2d 427 (Miss. 1983).

Pruett v. State, 431 So.2d 1101 (Miss. 1983).

Gilliard v. State, 428 So.2d 576 (Miss. 1983).

Evans v. State, 422 So.2d 737 (Miss. 1982).

King v. State, 421 So.2d 1009 (Miss. 1982).

Wheat v. State, 420 So.2d 229 (Miss. 1982).

Smith v. State, 419 So.2d 563 (Miss. 1982).

Johnson v. State, 416 So.2d 383 (Miss. 1982).

Edwards v. State, 413 So.2d 1007 (Miss. 1982).

Bullock v. State, 391 So.2d 601 (Miss. 1980).

Reddix v. State, 381 So.2d 999 (Miss. 1980).

Jones v. State, 381 So.2d 983 (Miss. 1980).

Culberson v. State, 379 So.2d 499 (Miss. 1979).

Gray v. State, 375 So.2d 994 (Miss. 1979).

Jordan v. State, 365 So.2d 1198 (Miss. 1978).

Voyles v. State, 362 So.2d 1236 (Miss. 1978).

Irving v. State, 361 So.2d 1360 (Miss. 1978).

Washington v. State, 361 So.2d 61 (Miss. 1978).

Bell v. State, 360 So.2d 1206 (Miss. 1978).
* Case was originally affirmed in this Court but on remand from U.S. Supreme Court, case was remanded by this Court for a new sentencing hearing.

DEATH CASES REVERSED AS TO GUILT PHASE AND SENTENCE PHASE

Giles v. State, 650 So.2d 846 (Miss. 1995).

Duplantis v. State, 644 So.2d 1235 (Miss. 1994)

Harrison v. State, 635 So.2d 894 (Miss. 1994)

Butler v. State, 608 So.2d 314 (Miss. 1992).

Jenkins v. State, 607 So.2d 1171 (Miss. 1992).

Abram v. State, 606 So.2d 1015 (Miss. 1992).

*1276 Balfour v. State, 598 So.2d 731 (Miss. 1992).

Griffin v. State, 557 So.2d 542 (Miss. 1990).

Bevill v. State, 556 So.2d 699 (Miss. 1990).

West v. State, 553 So.2d 8 (Miss. 1989).

Leatherwood v. State, 548 So.2d 389 (Miss. 1989).

Mease v. State, 539 So.2d 1324 (Miss. 1989).

Houston v. State, 531 So.2d 598 (Miss. 1988).

West v. State, 519 So.2d 418 (Miss. 1988).

Davis v. State, 512 So.2d 1291 (Miss. 1987).

Williamson v. State, 512 So.2d 868 (Miss. 1987).

Foster v. State, 508 So.2d 1111 (Miss. 1987).

Smith v. State, 499 So.2d 750 (Miss. 1986).

West v. State, 485 So.2d 681 (Miss. 1985).

Fisher v. State, 481 So.2d 203 (Miss. 1985).

Johnson v. State, 476 So.2d 1195 (Miss. 1985).

Fuselier v. State, 468 So.2d 45 (Miss. 1985).

West v. State, 463 So.2d 1048 (Miss. 1985).

Jones v. State, 461 So.2d 686 (Miss. 1984).

Moffett v. State, 456 So.2d 714 (Miss. 1984).

Lanier v. State, 450 So.2d 69 (Miss. 1984).

Laney v. State, 421 So.2d 1216 (Miss. 1982).

DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR RESENTENCING TO LIFE IMPRISONMENT

Reddix v. State, 547 So.2d 792 (Miss. 1989).

Wheeler v. State, 536 So.2d 1341 (Miss. 1988).

White v. State, 532 So.2d 1207 (Miss. 1988).

Bullock v. State, 525 So.2d 764 (Miss. 1987).

Edwards v. State, 441 So.2d 84 (Miss. 1983).

Dycus v. State, 440 So.2d 246 (Miss. 1983).

Coleman v. State, 378 So.2d 640 (Miss. 1979).

DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR A NEW TRIAL ON SENTENCING PHASE ONLY
* Shell v. State, 554 So.2d 887 (Miss. 1989), Shell v. Mississippi, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990) reversing, in part, and remanding, Shell v. State, 595 So.2d 1323 (Miss. 1992) remanding for new sentencing hearing.
* Pinkney v. State, 538 So.2d 329 (Miss. 1988), Pinkney v. Mississippi, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990) vacating and remanding, Pinkney v. State, 602 So.2d 1177 (Miss. 1992) remanding for new sentencing hearing.
* Clemons v. State, 535 So.2d 1354 (Miss. 1988), Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) vacating and remanding, Clemons v. State, 593 So.2d 1004 (Miss. 1992) remanding for new sentencing hearing.

*1277 * Jones v. State, 517 So.2d 1295 (Miss. 1987), Jones v. Mississippi, 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988) vacating and remanding, Jones v. State, 602 So.2d 1170 (Miss. 1992) remanding for new sentencing hearing.

Russell v. State, 607 So.2d 1107 (Miss. 1992).

Holland v. State, 587 So.2d 848 (Miss. 1991).

Willie v. State, 585 So.2d 660 (Miss. 1991).

Ladner v. State, 584 So.2d 743 (Miss. 1991).

Mackbee v. State, 575 So.2d 16 (Miss. 1990).

Berry v. State, 575 So.2d 1 (Miss. 1990).

Turner v. State, 573 So.2d 657 (Miss. 1990).

State v. Tokman, 564 So.2d 1339 (Miss. 1990).

Johnson v. State, 547 So.2d 59 (Miss. 1989).

Williams v. State, 544 So.2d 782 (Miss. 1989).

Lanier v. State, 533 So.2d 473 (Miss. 1988).

Stringer v. State, 500 So.2d 928 (Miss. 1986).

Pinkton v. State, 481 So.2d 306 (Miss. 1985).

Mhoon v. State, 464 So.2d 77 (Miss. 1985).

Cannaday v. State, 455 So.2d 713 (Miss. 1984).

Wiley v. State, 449 So.2d 756 (Miss. 1984).

Williams v. State, 445 So.2d 798 (Miss. 1984).
* Case was originally affirmed in this Court but on remand from U.S. Supreme Court, case was remanded by this Court for a new sentencing hearing.
NOTES
[1] The issues are presented in an order other than that used in Appellant's brief.