483 So.2d 1326 (1986)
Elisabeth V. WATSON
v.
STATE of Mississippi.
No. 55207.
Supreme Court of Mississippi.
January 29, 1986.
As Corrected on Denial of Rehearing March 12, 1986.
*1327 Romaine LeVean Richards, Hattiesburg, for appellant.
Edwin Lloyd Pittman, Atty. Gen., by Catherine Walker Underwood, Asst. Atty. Gen., and Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J. and HAWKINS and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
The facts of this case are unusual and very disturbing. On May 1, 1983, Hattiesburg Police officers were seeking one Chris Gnadt, a reported hit-and-run driver. During their investigation, the police inquired at the home of Gnadt's sister Elisabeth (Mrs. Wesley Watson). The Watsons said that they knew nothing about the affair or Gnadt's whereabouts. The next day, however, a Petal police officer told his Hattiesburg counterparts that the Watsons had spirited Gnadt to New Orleans after the officer left their house. A magistrate issued a warrant for the Watsons' apprehension for obstructing an arrest. Several officers set out for the Watson house to execute the warrant. When they confronted the family, a heated altercation ensued. The officers attempted to handcuff Wesley Watson, who refused to submit peacefully. While Watson was struggling with the police, Elisabeth Watson approached, holding the couple's two-week-old child, Christopher Bryan Watson. What happened next is in dispute. The officers testified that Elisabeth Watson sought to distract the officers by throwing the child onto the hood of the police car. He struck the hood, bounced off, struck the bumper and fell to the ground. She then retrieved the child, went over to an adjacent sidewalk, and threw him down on his head. After this, the police would not allow her to pick up the child again.
Elisabeth Watson, on the other hand, insists that the baby was not thrown, but accidentally dropped.
In any case, the baby was taken to Forrest General Hospital, where Dr. Ronald S. *1328 Kent treated him for head injuries. Fortunately, the child was not injured as severely as he might have been, and has since recovered.
Because of this incident, Elisabeth Watson was indicted for attempted child abuse. (Forrest County authorities appear to have believed that our statute requires that such a child must have a broken bone before prosecution for the completed offense is possible; young Christopher's bones were still soft, and thus were not broken). Trial was held in the Circuit Court of Forrest County, after which she was convicted and sentenced to twenty years' imprisonment.
An adjudication hearing was held in the Youth Court division of the County Court of Forrest County with reference to Christopher Bryan Watson. The purpose and outcome of this hearing do not appear in the record before us, but apparently the hearing pertained to the custody of the child. At trial, counsel for Mrs. Watson sought to impeach one of the arresting officers with his testimony at this hearing, which conflicted with that he gave at trial. However, since she had failed to obtain the transcript of the proceedings from the Youth Court, this testimony was properly excluded by the trial judge.
On appeal, Elisabeth Watson submits four assignments of error:

I. DID THE TRIAL COURT ERR BY ADMITTING PHOTOGRAPHS OF THE CHILD'S INJURIES INTO EVIDENCE?
Over defense objections, two photographs of Christopher's injuries taken at the hospital were introduced as evidence. Appellant argues that since it was never disputed that the baby fell, the pictures had no probative value, and their introduction could have had no purpose other than to inflame the jury.
The admission of photographs into evidence is a matter for the discretion of the trial judge. Hogan v. State, 366 So.2d 1089, 1091 (Miss. 1978). The mere fact that photographs are unpleasant or gruesome is no bar to their admission, if they are relevant. Dase v. State, 356 So.2d 1179, 1181 (Miss. 1978). While it is not disputed that in the present case the baby fell, the most critical issue in the whole case was whether the fall was accidental or the result of Elisabeth's deliberate act. In fact, defense counsel herself argued at trial that the injuries sustained by the baby were not consistent with his having been deliberately thrown. Pictures of the injuries were obviously relevant to such considerations, and we hold that their admission was perfectly proper.

II. DID THE TRIAL COURT ERR BY ALLOWING THE STATE TO AMEND THE INDICTMENT TO SPECIFY THE CODE SECTION UNDER WHICH THE ACCUSED WAS INDICTED AND BY DENYING THE DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR FAILURE TO STATE A CRIME AT COMMON OR STATUTORY LAW?
Appellant contends that the trial court had no authority to amend or allow the amendment of the indictment to reflect the code section. That is simply not the law. Such amendments are permissible. Bell v. State, 353 So.2d 1141, 1142 (Miss. 1978). In Mississippi it is not necessary that an indictment charging a statutory offense use the precise words of the statute; their equivalent may be used. Ferguson v. State, 198 Miss. 825, 828, 23 So.2d 687, 688 (1945). The decisive consideration is whether or not the court can see on what statute the charge is based. State v. Needham, 182 Miss. 663, 666, 180 So. 786, 787 (1938). The appellant correctly points out that words specifically describing the overt acts are mandatory in any indictment for attempt. Maxie v. State, 330 So.2d 277, 278 (Miss. 1976). The state's argument that this description is subsumed under the statutory words "otherwise abused" is persuasive. There can be no serious question as to whether the defendant or the court was apprised of the crime charged. This assignment of error is without merit.

*1329 III. DID THE TRIAL COURT ERR BY INSTRUCTING THE JURY THAT INTENT COULD BE INFERRED FROM THE DEFENDANT'S ACTS?
On the question of the defendant's intent, the trial judge granted state instruction S-3, which stated:
The Court instructs the jury that the act of a person that shows utter disregard for consequences may infer intent to commit the act. If you believe beyond a reasonable doubt that the defendant committed acts indicating no concern for the well-being of Christopher Watson, then you may infer that the injuries were intentionally inflicted.
Appellant insists that the specific intent to violate the child abuse statute must be affirmatively proven by this state and cannot be merely inferred. This assertion is far too sweeping. Our statute provides for the prosecution of "every person who shall design and endeavor to commit an offense, and shall do any overt act toward the commission thereof... ." Mississippi Code Annotated, Section 97-1-7 (1972).
This Court has held that:
Where a crime consists of an act combined with a specific intent, the intent is just as much an element of the crime as the act... . [W]here a specific intent is the offense charged, the court should not instruct the jury on the presumptions of evidence which apply to the question of intent. (Hydrick v. State, 246 Miss. 448, 452, 150 So.2d 423, 425 (1963)).
It would be wrong, however, to jump to the conclusion urged by the appellant that specific intent can never be proved by inference. Hydrick dealt with an instruction discussing "intent" as an abstract legal principle. Abstract instructions have always been frowned upon. E.g., Buchanan v. State, 427 So.2d 697, 689 (Miss. 1983); Callahan v. State, 419 So.2d 165, 176 (Miss. 1982); Kidd v. State, 258 So.2d 423, 428-29 (Miss. 1972). In the present case, the instruction complained of told the jury "that the act of a person that shows utter disregard for consequences may infer intent to commit the act." This is the statement of an abstract legal principle. Nor was the matter mended by the rest of the instruction, which spoke of "acts indicating no concern for the well-being" of the victim. That language could cover a wide range of behavior, including negligence.
Instruction S-3 was therefore clearly improper. There remains the question as to whether the point was effectively preserved for appeal. Miss.Sup.Ct. Rule 42 states in part:
It is ... the rule of this Court that no assignment of error based on the giving of an instruction to the jury will be considered on appeal unless specific objection was made to the instruction in the trial court stating the particular ground or grounds for such objection. However, in extreme cases, this Court may raise an objection to a jury instruction in order to prevent manifest injustice.
A corollary of this is that a general objection to a jury instruction does not suffice to preserve the issue for appeal. Holifield v. State, 431 So.2d 929, 930 (Miss. 1983); Palmer v. State, 427 So.2d 111, 115 (Miss. 1983); Oates v. State, 421 So.2d 1025, 1030 (Miss. 1982).
When the instruction was proposed, defense counsel in the present case made the following objection, which was overruled: "I object to the reference where they are referring to the intent to commit an act." Since the instruction in question dealt exclusively with intent, this was merely a general objection to the instruction as a whole, which gave no specific grounds. Therefore, it did not suffice to preserve the issue on appeal, unless it came within the saving clause of Rule 42, governing "extreme cases" in which "this Court may raise an objection to a jury instruction in order to prevent manifest injustice." The present case does not fulfill these requirements. No "manifest injustice" would result from the rejection of this assignment of error. This case is not without serious problems, which will be *1330 discussed below. These, however, did not result from this jury instruction.

IV. WAS THE VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
The jury is the arbiter of the weight of the evidence in a criminal case, and a conviction will not be set aside on appeal unless all the evidence, considered in the light most favorable to the state, would not have justified a reasonable juror's conclusion that the accused was guilty beyond a reasonable doubt. The record before us contains nothing which would justify our reversing. The true basis of this assignment lies outside the record we have, but in the youth court records, which allegedly show officer Samuel Croon giving testimony on an important issue  testimony he contradicted when he took the stand at the trial. This Court has stated many times that on appeal it will advert only to matters contained in the record. Shelton v. Kindred, 279 So.2d 642, 644 (Miss. 1973); Willenbrock v. Brown, 239 So.2d 922, 925 (Miss. 1970); Legg v. Legg, 251 Miss. 12, 24, 168 So.2d 58, 63 (1964). The youth court material is not part of the record in this cause, and is not properly before this court now. Appellant admits in her brief that at the time of trial, she did not have the youth court transcript, but asserts that it was "forthcoming." There is no record of defense counsel having asked for a continuance; although she knew that this material was potentially vital to her client's cause, she allowed this case to come to trial before its release had been authorized. Nor does her motion for a new trial contain any reference to the possibility of perjury. Therefore, this court cannot consider the matter on direct appeal.
As judges, we are sometimes incapacitated by law from "seeing" things that are glaringly obvious to us as men and women. This could be true in the present case. We are therefore glad to say that if conflicting testimony or perjury has affected this case, a remedy does exist. The Uniform Post-Conviction Collateral Relief Act (MCA § 99-39-1, et seq. (Supp. 1985)) was devised to meet just such problems. Of special interest is MCA § 99-39-5(1)(e), which allows a prisoner to move to set aside a sentence if "there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice."
We repeat, however, that on direct appeal we are confined to the record before us. That record gives us no basis for reversal. Accordingly, the judgment of the circuit court is affirmed, without prejudice to any post-conviction remedies.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.