**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2002-KA-00401-SCT**

*DEXTER TRAMAYNE WELLS*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 12/4/2001 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROSS PARKER SIMONS |
| | THOMAS L. MUSSELMAN |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | ROBERT KEITH MILLER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED-05/08/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE SMITH, P.J., EASLEY AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1. Dexter Tramayne Wells (Wells) was convicted by a jury in the Circuit Court of Jackson County of aggravated assault and murder. He was sentenced to twenty years imprisonment on the aggravated assault conviction and life imprisonment on the murder conviction. The sentences are concurrent. From these convictions and sentences, Wells appeals and presents the following issues for this Court's review:

    I.       Whether the trial court erred in admitting Chris Wells's testimony under M.R.E. 801(d)(1)(b), 803(1) and 803(2).

II.      Whether the trial court erred in granting jury instructions S-7 and S-11.

III.     Whether the trial court abused its discretion when it ruled that recross-examination is not allowed in Mississippi.

IV.      Whether the verdicts were against the overwhelming weight of the evidence.

V.       Whether Miss. Code Ann. § 47-5-139(1)(a) is unconstitutional.

## FACTS

¶2.      On January 27, 1996, Willie Sampson McCorvey a/k/a Frank borrowed the truck of his nephew, Darius Vaxter, to go to the store. He did not return.[1] McCorvey was later found murdered on Freeman Road in Jackson County, Mississippi. Cynthia Williams, the girlfriend of Vaxter, noticed that the truck had returned, but it was parked in a different place from where McCorvey or Vaxter would normally park. A masked perpetrator, known to us now as Victor McCoy, knocked first and when Williams would not allow him to enter, he kicked the door in and entered the trailer. Williams was shot in the back of her left shoulder. Williams called out to Vaxter for help. A struggle ensued between McCoy and Vaxter. During the struggle, Vaxter unmasked McCoy, and once McCoy was identified, he called out to Train a/k/a Dexter Wells to help him. Once Williams realized that someone was with McCoy, she hurried to lock the front door and called 911. From the window by the front door, Williams identified Wells as the other assailant. Wells unsuccessfully tried to break into the front door and broke out the front outdoor light. McCoy and Wells fled the scene prior to the police's arrival. The police retrieved a Tec 9 gun at the scene. No latent fingerprints were retrieved because the gun was muddy. Wells and McCoy were indicted for Count I aggravated assault against Williams, Count II aggravated assault of Vaxter and Count III

---

[1] Victor McCoy's statement in accordance with his plea agreement stated that he and Wells encountered McCorvey driving Vaxter's truck when they were headed to Vaxter's trailer to talk to him. They flagged the truck down, and an altercation ensued.

murder of McCorvey on February 14, 1997. McCoy entered a guilty plea to both counts of aggravated assault and to manslaughter on April 28, 1998, and May 1, 1998. Subsequently, he was sentenced to twenty years on each count to be served concurrently in the custody of the Mississippi Department of Corrections (MDOC).

¶3. Wells was tried and convicted of Count I aggravated assault of Williams and Count III murder of McCorvey on December 4, 2001. Wells was sentenced to twenty years imprisonment on Count I and to life imprisonment on Count II in the custody of the MDOC to run concurrently. The trial court denied Well's motion for JNOV or in the alternative a new trial. From that denial, Well's has perfected this appeal.

## DISCUSSION

*Admissibility of Chris Wells's Testimony*

¶4. Wells argues that the State failed to meet all the required rules for admission of the statement of his cousin, Chris Wells under the hearsay exception M.R.E. 801(d)(1)(b) for the following reasons: (1) Victor McCoy was not subject to cross-examination concerning the statement alleged by Chris Wells; (2) the statement made by Chris Wells was not consistent with McCoy's testimony; and (3) the statement was not offered to rebut an express or implied charge against McCoy by the defense of recent fabrication or improper influence or motive. Wells also contends that the statement allegedly made to Chris Wells by McCoy was not made while McCoy was perceiving an event or immediately thereafter. Wells further contends that there was no testimony concerning the lapse of time between the murder and when McCoy entered the vehicle with Chris and Byron Wells. Wells argues that the requirement for spontaneity has not been met. Wells also argues that there was no testimony that McCoy described or explained the event.

¶5. There was a pre-trial motion in limine to exclude statements made by McCoy to Chris Wells. Chris Wells stated that McCoy made statements to him after McCoy fled from Vaxter's home on the night of

3

January 27, 1996 when McCoy flagged down the car driven by McCoy's uncle Bryon Wells. Chris Wells was a passenger in the car. Chris Wells described McCoy as excited when he entered the car and that he could hear it in his voice. McCoy indicated that he wanted to go to Gautier. Chris Wells testified that McCoy stated, "Me and Train done killed Frank." Chris Wells further stated that when Byron Wells asked McCoy about Wells's whereabouts, he said, "I don't know. He left me." However, in an earlier statement given to police, Chris Wells apparently said after McCoy calmed down, McCoy declared that he and Wells had killed Frank.

¶6.     The judge took the arguments of counsel under advisement and decided not to make a ruling on the motion at the time. Before Chris Wells's testimony, Wells renewed his objection that Chris Wells's testimony should be excluded on the basis of not falling under any hearsay exception. The court ruled as follows:

> BY THE COURT: Well, this court has done a lot of research. And, as y'all know, we listened to the testimony of Victor McCoy during the lunch break. And although this court is first to admit that Mr. McCoy's testimony was, for lack of a better way of saying it, all over the page, it started out he did it alone, then he went to he admitted he gave that statement. Repeatedly, said, if he said it, it must have been true. Then he also tried to say, at one point, that he didn't really remember the details. So, he's really all over the place in his testimony.
>
> Clearly, in the brief cross-examination done by the defense attorney, Mr. Musselman, if not directly, he certainly implied that he gave that statement to the Court simply to get a deal from the State. So, I think that puts this squarely under 801(d)(1)(b), a prior consistent statement made before the statement we're referring to, is one reason that it's admissible.
>
> I've also looked at the other, if in fact the - - and 801 says it's not hearsay at all. I've also looked at the other cases concerning 803, as to hearsay exceptions, and I also find that his statements fall under hearsay exception 803 (1) and 803 (2). It's my understanding that these are statements - - this was a statement made shortly after the incident. I have looked - - Mr. Musselman and I had a discussion earlier about the time span. I don't know the exact time span, but I know it's after leaving the scene, catching a ride with somebody.

4

And, I'll hear from the witness, I believe, the  - - I don't know how many miles that is eight, ten miles from Moss Point. I think you said in between Moss Point and Gautier, which is several miles apart, so you're not talking about a long time span. And I can't find any case law that says there is any particular time involved. It's the circumstances of the statement. And I'm not convinced that because they were made immediately afterwards, before he had time for any reflection, that they are reliable, based upon that, which would fall under 803(1) and fall into, but that's all the time the Court has had to do the research. So, I'm denying your motion in limine and I'm going to allow the witness to testify for the State.

¶7.     M.R.E. 801(d)(1)(b) states in pertinent part:

**(d) Statements Which Are Not Hearsay.** A statement is not hearsay if: (1) *Prior Statement by Witness*. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive

The prior consistent statement of McCoy was properly admitted. McCoy, the declarant, admitted at trial that the statement which he gave to police in accordance with his plea agreement was a true statement. In that statement, he said that he and Wells were together when McCorvey was murdered and that they both shot the weapon used to commit the murder at the time McCorvey was shot. He also admitted that Wells was with him at Darius Vaxter's trailer because he called out to him for help. However, while on the stand McCoy stated that he was alone when he murdered McCorvey, when he shot Williams and when he pistol-whipped Vaxter. Also during his testimony, McCoy stated on numerous occasions that he could not remember what happened that night. McCoy was not a cooperative witness which is evidenced by the trial judge's statement that "Mr. McCoy's testimony was, for lack of a better way of saying it, all over the page, it started out he did it alone, then he went to he admitted he gave that statement. Repeatedly, McCoy said, if he said it, it must have been true. Then he also tried to say, at one point, that he didn't really remember the details. So, he's really all over the place in his testimony."

5

¶8.     The statement made by Chris Wells is consistent with McCoy's written statement and was offered to rebut an express or implied charge against McCoy for fabricating a previous statement by later stating on the witness stand that he was alone when the crimes took place. A prior inconsistent statement may be used to rebut the testimony of a witness whose memory fails him to prevent "an unwilling witness from seeking refuge in a lack of recollection." *Bush v. State*, 667 So.2d 26, 28 (Miss. 1996).

¶9.     Chris Wells stated that McCoy said that he and Wells killed McCorvey and that Wells had left McCoy at Vaxter's house. This is consistent with McCoy's earlier written statement that he and Wells were together on the night of January 27, 1996, and that they acted together to commit the crimes. For these reasons, we find that the trial judge properly admitted the statement McCoy made to Chris Wells into evidence.

¶10.    The statement is also admissible in under Rule 803 (1) & (2) which states:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
> **(1) Present Sense Impression.** A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter.
> **(2) Excited Utterance.** A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

¶11.    The statement made to Chris Wells by McCoy falls under Rule 803(1) because McCoy explained that he and Wells had killed McCorvey to Chris Wells, the first person he encountered after leaving Vaxter's trailer. "To be admissible under this exception, the statement must be spontaneous. The determination of spontaneity "is a question for the trial judge, whose action should not be overturned unless this Court would be justified in concluding that under all and any reasonable interpretation of the facts, the exclamation could not have been spontaneous." *Clark v. State*, 693 So.2d 927, 932 (Miss. 1997) (citing *Evans v. State*, 547 So.2d 38, 41 (Miss. 1989)).

6

¶12.    Upon killing McCorvey, McCoy immediately drove in Vaxter's truck to Vaxter's home and assaulted both Williams and Vaxter. After his fight with Vaxter, McCoy managed to run away and flagged down a car. In the car on the way to Gautier, McCoy told Chris Wells about the murder. In a previous statement given to the police, Chris Wells stated that once they got around Gautier, McCoy calmed down enough to tell him that he and Wells had killed McCorvey.

¶13.    Since Gautier and the Three Rivers Community in Jackson County are only several miles apart, we agree with the trial court that it is inconsequential whether the statement "Me and Train done killed Frank" was made as soon as McCoy entered the car or whether it was made in route to Gautier. In either event, not very much time passed between the time McCoy entered the car and his statement. Therefore, we conclude that the statement was sufficiently contemporaneous to fit within the exception and that the trial court did not err in admitting McCoy's statement into evidence under the M.R.E. 803(1).

¶14.    The statement made to Chris Wells by McCoy is also admissible as an excited utterance under M.R.E. 803(2). McCoy made the statement to Chris Wells while still under the stress of startling events. "The reliability of an excited utterance is based on the premise that circumstances may place the declarant in such an excited state as to temporarily impede the capacity for reflection. This exception is broader in scope than the 'present sense impression' exception in that the statement need only 'relate' to the startling event as opposed to 'describing' it." *Clark v. State*, 693 So.2d at 932.

¶15.    When Chris and Byron Wells picked McCoy up, he was running from the scene of a crime to evade the police. Surely, he was still under the stress of the incident. McCoy never had time to calm down after the murder. McCoy committed one violent attack and went on to Vaxter's home and committed another. Furthermore, Chris Wells testified that McCoy was excited when they picked him up and that he could hear it in McCoy's voice. Additionally, in an earlier statement that Chris Wells had made to the

7

police, he described McCoy as visibly upset when he got into the car. The statement made by McCoy related to the event and was made within hours of it. In addition, the statement was made while he was excited. Therefore, the trial court committed no error in admitting the statement into evidence under the excited utterance exception.

*Jury Instructions*

¶16. Wells argues that jury instructions S-7 and S-11 are ***Hornburger*** instructions on aiding and abetting and were condemned by the Supreme Court in ***Milano v. State***, 790 So.2d 179, 184-85 (Miss. 2001).

¶17. Jury Instruction S-7 states:

The Court instructs the jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, wilfully and feloniously doing any act which is an element of the crime, or immediately connected with it or leading to its commission, is as much a principal as if he had, with his own hand, committed the whole offense.

Therefore, if you believe from the evidence, beyond a reasonable doubt, that the defendant, Dexter Tramayne Wells, was present at the time of the murder of Willie Sampson McCorvey, and consented and encouraged the commission of that crime, and did knowingly, wilfully, unlawfully, and feloniously do any act which is an element of that crime, or immediately connected with that crime, or leading to its commission, then you shall find defendant, Dexter Tramayne Wells, guilty of the crime of murder.

¶18. Jury Instruction S-11 states:

The Court instructs the jury that each person present at the time, and consenting to and encouraging the commission of a crime, or immediately connected with it or leading to its commission, is as much a principal as if he had, with his own hand, committed the whole offense.

Therefore, if you believe from the evidence, beyond a reasonable doubt, that the defendant, Dexter Tramayne Wells, was present at time of the aggravated assault of Cynthia Williams, and consented to and encouraged the commission of that crime, and did knowingly, wilfully, unlawfully, and feloniously do any act which is an element of that crime,

8

or immediately connected with that crime, or leading to its commission, then you shall find defendant, Dexter Tramayne Wells, guilty of the crime of aggravated assault.

Wells objected to S-11 as duplicative of jury instruction S-5. Wells also objected to S-7 and S-11 because the court had given S-5, a general statement of the law on aiding and abetting. The attorney for Wells made the following objection: "Judge, for the record, we object to both. The only change - - it's a different instruction and the only thing they added was a half sentence, to obviously, to try and get it before the jury three times, the same principle." Both instructions were given.

¶19. The State correctly asserted that Wells did not preserve this issue for the purposes of appeal. The failure of an offended party to properly object to a jury instruction bars the issue on appeal. ***Jones v. State***, 776 So.2d 643, 653 (Miss. 2000).

> It is . . . the rule of this Court that no assignment of error based on the giving of an instruction to the jury will be considered on appeal unless a specific objection was made to the instruction in the trial court stating the particular ground or grounds for such objection. However, in extreme cases, this Court may raise an objection to a jury instruction in order to prevent manifest injustice.

*Watson v. State*, 483 So.2d 1326, 1329 (Miss. 1986). "A general objection [or one different from the one argued on appeal] to a jury instruction does not suffice to preserve the issue for appeal." Wells made no specific objection to jury instructions S-7 and S-11 based on the issues he has raised on appeal. For this reason, this issue is waived. ***Id.***

*Recross-examination*

¶20. At the conclusion of redirect examination of Officer Robert Mabens, an investigator for the Jackson County Sheriff's Department, the following colloquy transpired:

> BY MR. MUSSELMAN: Judge, I have one follow-up question.
> By MR. MUSSELMAN (continuing):

Q. Mr. Lawrence wanted you to read a little but . I want you to read - -

BY THE COURT: Wait a minute. Approach the bench.

(At the bench.)

BY THE COURT: We don't have recross.

BY MR. LAWRENCE: I'd object.

BY MR. MUSSELMAN: Judge, we want to go into the next part, about her saying something - -

BY THE COURT: Which part?

BY MR. LAWRENCE: I object, Judge.

BY MR. MUSSELMAN: Where she says , " I'm not trying to tell you all no story. I told the lady on the 911 tape." I think I can get into that.

BY THE COURT: We don't have recross.

BY MR. MUSSELMAN: Okay, I want to put this on the record, though, Judge.

BY THE COURT: Go ahead.

BY MR. MUSSELMAN: Okay. I'd proffer my recross-examination to you that I would have officer Mabens go through the next couple of lines, after Mr. Lawrence had him stop reading, where she said, "If you get that 911 tape, I told the lady," and then she said, "I'm not trying to tell you all no story."

¶21.    Wells contends that the trial court erred in refusing to allow him to recross-examine the investigator in order to raise the issue of spoliation of evidence. Wells directs us to **_Hubbard v. State_**, 437 So.2d 430, 434 (Miss. 1983), for the proposition that recross- examination is allowed under Mississippi law and that the trial judge's refusal was a violation of his constitutional rights.

¶22.    Wells correctly asserts that recross-examination is allowed. However, "recross examination may be limited by the trial judge in his sound discretion." **_Id._** "Denial of recross examination is appropriate where there is no claim of oversight and no reason stated why the matter was not inquired into on the cross-examination." Wells did not raise a claim of oversight in his objection nor did he state a reason why he did not inquire into to the issue during his opportunity for cross-examination. **_Id._** A review of the record reveals that the trial judge allowed full cross-examination and if counsel did not take advantage of that opportunity, the error should not be imputed to the trial judge. For the reasons stated, this issue is meritless.

*Sufficiency of the Evidence*

10

¶23.    Wells argues that the jury's verdict convicting him of aggravated assault and murder was not based on legally sufficient evidence. Wells asserts that there is no testimony on any action by Wells that will satisfy the State's burden of proving beyond a reasonable doubt that Wells committed the elements of the crime of aggravated assault.  Well also argues that the evidence against him for the murder of McCorvey is insufficient because the sole witness to the murder, McCoy, testified that he was alone when the crime occurred.  Wells maintains that the only testimony which linked him to the murder was the hearsay testimony of Chris Wells.

¶24.    When reviewing the sufficiency of evidence "all evidence and inferences derived therefrom, tending to support the verdict, must be accepted as true, while all evidence favoring the defendant must be disregarded." **Ballenger v. State**, 667 So.2d 1242, 1252-53 (Miss. 1995). A jury verdict cannot be reversed "unless it is found that no reasonable and fairminded hypothetical juror could find beyond a reasonable doubt that the defendant was guilty." **Id.**

¶25.    One who acts with others in the commission of a crime and aids and abets is  responsible as a principal in the offense. **Bass v. State**, 231 So.2d 495, 496 (Miss. 1970).  Miss. Code Ann § 97-3-7 (2)(a) & (b) (Rev. 2000) states:

> (2) A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm;

Miss. Code Ann.§ 97-3-19(1) (a) & (b) (Rev. 2000) states:

> (1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases: (a) When done with deliberate design to effect the death of the person killed, or of any human being; (b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life,

although without any premeditated design to effect the death of any particular individual;

¶26. McCoy pleaded guilty to murdering McCorvey, to shooting Williams and to pistol-whipping Vaxter. McCoy also admitted in his statement for his plea agreement that Wells shot at McCorvey and that he called to Wells to assist him while he was fighting with Vaxter at Vaxter's home. Furthermore, Chris Wells testified that McCoy stated that he and Wells killed McCorvey and that Wells had left McCoy at Vaxter's home. Additionally, Williams testified that when McCoy called out, "Train help me. Help me. They got me" They got me," she realized that there was someone with McCoy. She stated that she quickly ran to lock the door to call the police and she could see Train a/k/a Wells through the window as he tried unsuccessfully to enter the trailer. Additionally, she identified Wells in court as the man she saw from in the window of the trailer on the night in question. She further testified that Wells knocked the front light out by the door and ran off when he heard her talking to the 911 operator.

¶27. The evidence reveals that Wells acted with McCoy in the commission of the crimes of aggravated assault against Williams and the murder of McCorvey. The jury is the finder of facts, and its duty is to weigh the credibility and veracity of each witness. *Groseclose v. State*, 440 So.2d 297, 300 (Miss. 1983). The jury also had the opportunity to observe the demeanor of the witnesses. Upon hearing all of the testimony, the jury convicted Wells of aggravated assault and murder. The evidence is sufficient that a reasonable fair-minded juror could have found Wells guilty; therefore, no reversible error was committed.

*Sentencing*

¶28. Wells argues that Miss. Code Ann. § 47-5-139(1)(a) is unconstitutional because it makes an age-based distinction which lengthens a criminal sentence simply because of the age of the inmate. Miss. Code Ann. § 47-5-139(1)(a) (Rev. 2000) states in pertinent part:

(1) An inmate shall not be eligible for the earned time allowance if: (a) The inmate was sentenced to life imprisonment; but an inmate, except an inmate sentenced to life imprisonment for capital murder, who has reached the age of sixty-five (65) or older and who has served at least fifteen (15) years may petition the sentencing court for conditional release;

Wells furthers contends that it is improper for the court to impose a harsher sentence for a like crime conditioned on the age of the offender.

¶29.    Wells never raised this argument in the trial court or in his motion for JNOV or in the alternative a new trial.  This Court continues to adhere to the rule that when a party fails to raise a constitutional issue in the trial court, that issue will not be decided on appeal. ***Colburn v. State***, 431 So.2d 1111, 1114 (Miss. 1983).  "Only matters of jurisdiction may be raised for the first time on appeal." ***Id.***  Because this issue was not preserved for the purposes of appeal, it is also waived.

## CONCLUSION

¶30.    We hold that all issues in this matter are without merit or are procedurally barred,  and we affirm the trial court's judgment.

¶31.    **COUNT I: CONVICTION OF  AGGRAVATED ASSAULT AND SENTENCE OF (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS,  AFFIRMED  COUNT II: CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCES SHALL RUN CONCURRENTLY.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, DIAZ, EASLEY AND CARLSON, JJ., CONCUR.**